IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT CLEWS, JOSEPH S POTHERING, and DEBRA M DETWEILER, | Case # 3:17-cv-02233 |
| | (Judge Caputo) |
| Plaintiffs | Jury Trial Demanded |
| versus | Electronically Filed |
| COUNTY OF SCHUYLKILL, | |
| Defendant | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, County of Schuylkill ("County"), submit the following statement of undisputed material facts in connection with their motion for summary judgment. Defendant has set forth the version of facts most favorable to plaintiffs Scott Clews ("Clews"), Joseph Pothering ("Pothering") and Debra Detweiler ("Detweiler") so that the statement will be beneficial to the Court in adjudicating the summary judgment motion. Accordingly, the facts submitted here are deemed admitted only for purposes of the pending summary judgment motion and defendant reserves the right at time of trial to dispute any or all of the facts stated here.

**I.     Parties**

1. Plaintiff Scott P. Clews ("Clews") is a former Deputy Coroner with the County of Schuylkill.  (Amended Complaint, Doc 7, ¶¶ 1, 5).

2. Clews was employed as a Deputy Coroner for 8 years, between 2008 and 2016.  (Clews Dep, 13:10-13, 23:15, which is included here as **Exhibit 1**).

3. Clews was also employed, simultaneously, as a 911 operated for the County.  He has worked as a 911 operator for 18 years and remains an employee of the County today in that capacity.  (Clews Dep, 9:7-14).

4. Plaintiff Joseph Pothering ("Pothering") is a former Deputy Coroner with the County of Schuylkill.  (Amended Complaint, Doc 7, ¶¶ 2, 5).

5. Pothering was employed as a Deputy Coroner for 11 years, between 2008 and 2019.  (Pothering Dep, 8:18, which is included here as **Exhibit 2**).

6. Pothering was also employed, simultaneously, as a 911 operated for the County.  He worked as a 911 operator for 26 years and retired from that capacity in April 2018.  (Pothering Dep, 7:19-25; 8:1-5).

7. Plaintiff Debra Detweiler ("Detweiler") is a current Deputy Coroner with the County of Schuylkill.  (Amended Complaint, Doc 7, ¶¶ 3, 5).

8. Detweiler is employed as a Deputy Coroner and has been for approximately 5 years, between 2014 and 2019. (Detweiler Dep, 8:1-17, which is included here as **Exhibit 3**).

9. Detweiler is also simultaneously employed by the County in the tax assessor's office as a certified field appraiser. She has worked as a certified field appraiser since 2000. (Detwiler dep, 7:2-20; 8:9-10).

10. Job duties of a Deputy Coroner are to be dispatched to a scene of a death, investigate and determine a cause of death on behalf of the Coroner. (Clews dep, 19:4-8).

11. Defendant County of Schuylkill ("County") is a county government organized and existing under the laws of the Commonwealth of Pennsylvania. (Amended Complaint, Doc 7, ¶ 4).

12. The elected Coroner of the County is David Moylan, M.D. ("Moylan"). He has been the elected Coroner since taking office in January 2012. (Moylan Dep, 5:19-25, which is included here as **Exhibit 4**).

13. Dr. Moylan, as the elected Coroner, has plenary power to hire and fire deputy coroners. (Amended Complaint, Doc 7, ¶14; Moylan Dep, 43:23-25).

## II. Events Leading to the Administrative Separation of Plaintiffs (No Retaliation)

14. In the latter part of 2015, Moylan was made aware of a policy that employees of the County could not work more than one job and generate more than 40 hours of work. This policy change directly impacted plaintiffs Clews, Pothering and Detweiler. (Moylan Dep, 42:11-17).

15. In a Commissioners meeting on June 1, 2016, the Commissioners of the County approved the administrative separation of the three Plaintiffs as deputy coroners due to their combination of employment exceeding 40 hours per week. (Moylan Dep, 44: 4-13).

16. Moylan testified that each of the plaintiffs provided excellent service to the County and it was with reluctance that he approved their terminations due to the 40 hour rule set forth by the Commissioners. (Moylan Dep, 44:14-17).

17. Notwithstanding the administrative decision by Moylan and the Commissioners, Plaintiff Detweiler conceded that she was never separated from the Coroner's office. (Detweiler Dep, 32:13-17).

18. Notwithstanding the administrative decision by Moylan and the Commissioners, Plaintiff Pothering conceded that he was never separated from the Coroner's Office during 2016. (Pothering Dep, 38:16-25; 39:1-25).

19. Pothering testified that his termination as a Deputy Coroner was in 2019 and he perceived his termination to be over "political" differences, unrelated to the overtime issue. (Pothering Dep, 41:7-22).

20. Plaintiff Clews was terminated from the Coroner's Office on June 1, 2016 and has not returned to work as a Deputy Coroner. (Clews Dep, 23:15).

21. Plaintiff Clews testified that Moylan informed him that his termination was due to compliance with federal overtime laws. (Clews Dep, 24:1-5).

22. Clews only addressed unpaid overtime with Moylan after his termination. (Clews Dep, 24:11-14).

### III. Plaintiffs' Request for Information Regarding Unpaid Overtime

23. Plaintiff Clews conceded that he had no conversations with anyone at the County, including Moylan, regarding unpaid time and/or overtime prior to his separation from employment. (Clews Dep, 24:15-22).

24. The only conversations that Clews had with Moylan regarding unpaid overtime was subsequent to his termination. (Clews Dep, 24:11-14).

25. Clews acknowledged the payment of $1200 dollars from the County subsequent to the initiation of the lawsuit as additional payment for unpaid overtime. (Clews Dep, 36:15-17).

26. Plaintiff Pothering testified that it was some time in 2015 that he realized that there was unpaid overtime that he was due and unpaid. He spoke to payroll department and Charity Conrad regarding the unpaid overtime. (Pothering Dep, 60:7-10, 20-25; 61:1-13).

27. Pothering acknowledged the payment of approximately $5900 as additional payment for unpaid overtime. (Pothering Dep, 60:11-13).

28. Plaintiff Detweiler testified that she was made aware of unpaid overtime by Plaintiffs Pothering and Clews in 2016. (Detweiler Dep, 32:1-12).

29. Detweiler acknowledged the payment of $3,792 as additional payment for unpaid overtime since the start of the lawsuit. (Detweiler Dep, 5-10).

### IV. Plaintiffs Are Not "Employees" Under the Fair Labor Standards Act

30. All three Plaintiffs were hired by the Coroner of the County at the time of their hire. Pothering and Clews were hired by former Coroner Joseph Lipsett and Detweiler was hired by Moylan. (Pothering Dep, 10:22-23) (Clews Dep, 13:10-13; 16:15-18) (Detweiler 9:5-6) (Amended Complaint, Doc 7, ¶14).

31. Plaintiff Clews confirmed that Dr. Moylan was his supervisor. (Clews Dep, 16:19-25; 17:1-10).

32. Clews received instructions from Moylan or his chief deputy, Dr. Weber, for every call and assignment. He then had to report his findings back to Dr. Moylan for every death investigation performed. (Clews Dep, 18:5-13; 22:5-21).

33. Clews testified that Deputy Coroners were required to wear "nice attire" to a crime scene. "…like khaki pants, polo shirt…". (Clews Dep, 22:22-25; 23:1).

34. Clews testified that Deputy Coroners had a fluorescent or reflective vest for when they were dispatched to a traffic accident scene. (Clews Dep, 23:2-3).

35. Clews confirmed that Deputy Coroners had an identification badge that showed they were representing the Coroner's office in public at a crime scene. (Clews Dep, 23:4-6).

36. Clews was told by Moylan that he represented the Coroner's Office to the public. (Clews Dep, 23:7-12).

37. Plaintiff Pothering worked "pretty close" with Moylan, who he also conceded was his supervisor. (Pothering Dep, 14:11-18)

38. Pothering's position involved determining the cause and manner of death of individuals "under Dr. Moylan's supervision." (Pothering Dep, 14:1-5)

39. Deputy Coroners are Moylan's eyes at a crime scene and his first line observers. (Pothering Dep, 14:6-10).

40. Pothering testified that Deputy Coroners had specific attire that Deputy Coroners were to wear to crime scenes, "causal clothes. Nice – you know, professional, try to look." (Pothering Dep, 14:22-24).

41. Pothering confirmed that Deputy Coroners had an identification badge that showed they were representing the Coroner's office in public at a crime scene. (Pothering Dep, 14:25; 15:1-2).

42. Pothering was told by Moylan that he represented the Coroner's Office to the public. (Pothering Dep, 15:3-5).

43. Plaintiff Detweiler has worked very closely with Moylan and he continues to direct he work as a supervisor. (Detweiler Dep, 12:17-25; 13:1, 4-5).

44. Detweiler testified that when the Deputy Coroners were to go in public to a crime scene, they were told by Moylan that they must be presentable "because you were representing the county." (Detweiler Dep, 13:6-12).

45. Specifically, Moylan told Detweiler that she was representing the office of the Coroner to the public. (Detweiler Dep, 13:17-19).

## V: Plaintiffs Failed to Present Evidence of Underpayment and/or Failure to Pay Overtime without Resorting to Conjecture

46. Plaintiff Clews, within his Responses to Interrogatories, estimated that he worked 20 hours of overtime per week that was unpaid. (Clews Interrogatory Response ¶6, which is included here as **Exhibit 5**).

47. Clews testified that the 20 hours per week of alleged overtime paid was an estimate that he generated based upon his recollections of the work that was done for over 2 years. (Clews Dep, 36:8-10).

48. Clews testified that he cannot be sure whether the 20 hours that he alleged to be unpaid was documented and unpaid or undocumented an unpaid. (Clews Dep, 34:20-25; 35:1-3).

49. Clews speculated that he came up with an "average" for how many calls he handled and how many hours it would be for the 20 hour per week figure. (Clews Dep, 35:10-16).

50. Plaintiff Pothering created a list of job duties for the activities he performed as a Deputy Coroner. (Pothering Dep, 58:14-24, attached as **Exhibit 6**).

51. Pothering alleged 30 hours of unpaid overtime per week as his claim under the FLSA. (Pothering Dep, 21:16-20).

52. Pothering conceded that he cannot determine where he came up with the 30 hours of unpaid overtime. (Pothering Dep, 23:9-14).

53. Pothering created a log of time regarding the tasks he was doing at work. He was requested to create that log by Dr. Moylan in 2016 and it consisted of a recordation of time for two months. (Pothering Dep, 22:1-23).

54. Pothering conceded that he did not base his allegation of 30 hour a week of unpaid overtime upon the log created in 2016. (Pothering Dep, 22:24-25; 23:1-14).

55. Plaintiff Detweiler created a list of job duties for the activities she performed as a Deputy Coroner. This extensive job duties list did not contain an estimate for amounts of time to complete each task. (Detweiler Dep, 42:23-25; 43:1-17, attached as **Exhibit 7**).

56. Detweiler alleged 30 hours of unpaid overtime per week for 2.5 years in her Responses to Interrogatories and during her deposition. (Detweiler Dep, 25:9-18, Detweiler Interrogatory Response ¶6, attached as **Exhibit 8**).

57. Detweiler created a log of time regarding the tasks she was doing at work. She was requested to create that log by Dr. Moylan in 2016 and it consisted of a recordation of her working time for two months. (Detweiler Dep, 19:1-25; 20:1-5).

58. Detweiler was unable to provide a rationale behind her allegation of 30 hours per week. She speculated "quite honestly, the time varies throughout

the year, throughout the week, of what calls come in. So it was very – it would be very hard for us to say X amount, so it was an approximate time frame of how much time we were spending each week." (Detweiler Dep, 25:9-25; 26:1).

                                  Respectfully submitted,

                                  **THOMAS, THOMAS & HAFER LLP**

       By:   /s/ Christopher L. Scott
               Christopher L. Scott (PA #200976)
               cscott@tthlaw.com
               305 N Front Street, 6th Floor
               Harrisburg, PA 17101
               717.237.7100 (telephone)
               717.237.7105 (facsimile)
               *Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I certify that on this 12th day of November 2019, a true and correct copy of this Statement of Material Facts was served via ECF upon the following:

Edward M Brennan, Esquire
306 Mahantongo Street
Pottsville, PA 17901
emb@attybrennan.com
*Counsel for Plaintiffs*

                                        **THOMAS, THOMAS & HAFER LLP**

                          By:    /s/ Christopher L. Scott