**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SCOTT P. CLEWS,                          : Case Number:  3:17-cv-02233
JOSEPH S. POTHERING and          :
DEBRA M. DETWEILER,               : Jury Trial Demanded
            Plaintiffs             :
                              : Electronically Filed
       vs.                           :
                              :
COUNTY OF SCHUYLKILL,          :
            Defendant           :

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.**    **PROCEDURAL HISTORY OF THE CASE**

Plaintiffs began this FLSA action by filing a Praecipe for Writ of Summons with the Court of Common Pleas of Schuylkill County on November 17, 2016.  Defendant filed a Notice of Removal to this Honorable Court.

**II.**    **STATEMENT OF FACTS**

Plaintiffs, Scott P. Clews, Joseph S. Pothering and Debra M. Detweiler, were fulltime employees of Schuylkill County who also worked as part-time deputy coroners for Schuylkill County.

Plaintiffs were paid a flat fee for services rendered with the exception of investigations which took more than three (3) hours.  If an investigation required more than three (3) hours, deputies were paid $15.00 an hour for each additional hour.

In July of 2015, the Human Resource Director, Martina Chwastiak, directed the Coroner's Office to keep track of the hours worked on all tasks, in addition to investigations, due to the requirements of the Affordable Care Act.  Despite this direction from the Human Resource

Department, the investigation reports did not always show the number of hours worked for a flat fee. Some of the reports simply showed the flat fee.

In May of 2016, Martina Chwastiak, Human Resource Director, sent an email to Dr. Moylan about overtime laws. On June 1, 2016, the minutes of the Schuylkill County Board of Commissioners indicate that the Coroner requested approval of the termination of Plaintiffs Clews and Pothering from their positions as deputy coroners effective May 7, 2016. All three Commissioners voted yes. The minutes further state that Human Resource Director, Martina Chwastiak, explained that the employees who had worked for the Coroner's Office were terminated due to a recent overtime issue. Commissioner Halcovage informed the audience that the termination was because of federal law.

All of the County Commissioners admitted that Plaintiffs were not properly paid overtime while working as deputy coroners. See Staudenmeier N.T. Pages 23-24, Summary Judgment Motion Exhibit "9"; Commissioner Hess N.T. Pages 18-20, Summary Judgment Motion Exhibit "10"; Commissioner Halcovage N.T. Pages 19-24, Summary Judgment Motion Exhibit "8"; County Administrator Bender N.T. Pages 53-56, Summary Judgment Motion Exhibit "13"; Dr. Moylan N.T. Pages 32-35, Summary Judgment Motion Exhibit "11")

## III.   STATEMENT OF QUESTIONS INVOLVED

**A.   DID DEFENDANT HAVE ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE OVERTIME HOURS WORKED BY PLAINTIFFS?**

**B.   WAS DEFENDANT'S CONDUCT WILLFUL AND DONE IN BAD FAITH?**

**C.   DID DEFENDANT RETALIATE AGAINST PLAINTIFFS CLEWS AND POTHERING FOR ASSERTING THEIR RIGHTS UNDER THE FLSA?**

**D.   DID DEFENDANT FAIL TO MAINTAIN ACCURATE OR ADEQUATE RECORDS OF THE HOURS WORKED BY PLAINTIFFS?**

E.      **WHAT IS THE REGULAR RATE OF PAY TO BE USED FOR THE CALCULATION OF PLAINTIFFS' OVERTIME CLAIM?**

## IV.      ARGUMENT

A.      **DEFENDANT HAD ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE OVERTIME HOURS WORKED BY PLAINTIFFS.**

The allegations in Plaintiffs' Complaint and the answers filed by the County establish that Plaintiffs were in an employer-employee relationship with the County and that they were an employee status at all the relevant times. (See Complaint & Answer paragraphs 14 and 15, Summary Judgment Exhibits "1" and "2") Under the FLSA, "employer" includes a public agency. 29 U.S.C.A. § 203(d). An "employee" includes an individual employed by a public agency. 29 U.S.C.A. § 203(e)(2)(C). The phrase "enterprise" under the statute includes activities of a public agency. 29 U.S.C.A. § 203(r)(1),(2)(C). The activity of a public agency is considered enterprise engaging in commerce or in the production of goods for commerce. 29 U.S.C.A. § 203(s)(1)(C). All three Commissioners, the County Administrator and Dr. Moylan admit that Plaintiffs were owed money for unpaid overtime hours. (See Commissioner Staudenmeier N.T. Pages 23-24, Summary Judgment Motion Exhibit "9"; Commissioner Hess N.T. Pages 18-20, Summary Judgment Motion Exhibit "10"; Commissioner Halcovage N.T. Pages 19-24, Summary Judgment Motion Exhibit "8"; County Administrator Bender N.T. Pages 53-56, Summary Judgment Motion Exhibit "13"; Dr. Moylan N.T. Pages 32-35, Summary Judgment Motion Exhibit "11") Therefore, the only element at issue in Plaintiff's prima facie case is whether the County had knowledge of Plaintiffs' overtime. Brown v. Family Dollar Stores of IN, LP, 534 F.3d 593 (7th Circ. 2008)

3

To recover for such uncompensated overtime work, a plaintiff must demonstrate that the defendant-employer had either actual or constructive knowledge of the plaintiff's overtime work," Alers v. City of Phila., 919 F.Supp.2d 528, 558 (E.D. Pa. 2013) (internal citation omitted). Still, an employer must ensure that it is complying with the FLSA. Gulick v. City of Pittston, 995 F.Supp.2d 322, 338-39 (M.D. Pa. 2014).

Martina Chwastiak Became Human Resource Director in 2009. (Martina Chwastiak N.T. Page 6, Summary Judgment Motion Exhibit "3")  Although she could not remember when she first became aware of the overtime issue for Plaintiffs, she did state that she was aware of it for quite some time.  She also stated, "This issue bothered me for quite a long time.  And I spoke to my boss, Mark Scarbinksy, many, many times once I became HR Director." (Martina Chwastiak N.T. Page 13, Summary Judgment Motion Exhibit "3")  She felt that she "always talked to" Mr. Scarbinsky about this issue. (Martina Chwastiak N.T. Page 22, Summary Judgment Motion Exhibit "3")  In June of 2015, she was concerned about the reporting of hours and the flat fees used by the Coroner's Office. (Martina Chwastiak N.T. Pages 21-22, Summary Judgment Motion Exhibit "3")  These discussions occurred on many occasions before 2016. (Martina Chwastiak N.T. Pages 13-14, Summary Judgment Motion Exhibit "3")  Over the years, she was talking about the flat fee and how it didn't fit into the Wage and Hour Law.  She asked Mr. Scarbinsky where the flat fee came from and he responded that over the years it was developed by one of the Coroner's attorneys and that it was used in a factory setting.  She just did not understand why they continued with this practice or that the County felt that it was okay. (Martina Chwastiak N.T. Pages 14-15, Summary Judgment Motion Exhibit "3")  Chwastiak recalled the last conversation she had with Mr. Scarbinsky because she was frustrated that he wasn't listening. (Martina Chwastiak N.T. Pages 13-14, Summary Judgment Motion Exhibit

"3")  After checking the Wage and Hour Law, she stated, "I tried everything to get their attention that it was not - - this was against the law.  And I had no response until I wrote an email." (Martina Chwastiak N.T. Pages 14-15, Summary Judgment Motion Exhibit "3")  In May of 2016, Martina Chwastiak sent an email to Dr. Moylan about overtime laws and that she had been talking to Mr. Scarbinsky for years prior to this email.  (Martina Chwastiak N.T. Pages 15-16, Summary Judgment Motion Exhibit "3")

An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond his shift.  29 C.F.R. § 785.11. The employer's knowledge is measured in accordance with his duty to inquire into the conditions prevailing in his business.  When an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge.  The County, as employer, clearly had knowledge of what was going on at the Coroner's Office and simply ignored the issue.

### B.     DEFENDANT'S CONDUCT WAS WILLFUL AND DONE IN BAD FAITH.

Under the FLSA, whether an employer "willfully violates" the statute is of import because such a finding extends the FLSA's limitations period from two years to three, bringing another year of lost pay within the scope of the worker's claim.  Souryavong v Lackawanna County, 872 F.3d 122 (2017).

For the three-year limitations period for "willful" violations to apply, a plaintiff must show that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Acting only "unreasonably" is insufficient, some degree of actual awareness is necessary.  Souryavong v Lackawanna County, supra.  The Director of Human Resources

repeatedly advised the County that they were in violation of federal law by using a flat fee for part-time employees without keeping track of their hours.  Unlike the plaintiffs in the Souryavong case, Defendant County was aware of the two-job FLSA overtime problem as it related to the deputy coroners who were also fulltime employees.  This awareness was prior to 2015 and possibly as far back as 2009 when Martina Chwastiak became Human Resource Director.  (Martina Chwastiak N.T. Pages 6, 13-15, 21-22, Summary Judgment Motion Exhibit "3").  Defendant County was well aware of the FLSA's strictures and looked the other way as the deputy coroners continued to be paid flat fees as if they continued to be independent contractors.  Evidence that Defendant County terminated two of the three Plaintiffs because of the overtime rules, and evidence that attempts were made to get around the overtime rules by limiting the amount of time Plaintiffs could work at an investigation all illustrate that the County had an actual awareness of the violation of the FLSA overtime mandate.

In addition, the County took no affirmative steps to ascertain the FLSA requirements prior to the overtime violations at issue despite the warnings of the Human Resource Director. Under the FLSA, an employee may recover "their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in and additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  A court may decline to award liquidated damages if an employer shows that any conduct resulting in an FLSA violation was in "good faith" and that it had "reasonable grounds for believing" that it complied with the statute. 29 U.S.C. § 260.

The FLSA provides for liquidated damages and states that such damages shall be paid unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260.  In order to

show "good faith," the defendant employer "must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions." Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907-10 (3d Cir. 1991) (emphasis added).  Each Commissioner acknowledged that they were not aware of any affirmative steps taken to ascertain the FLSA requirements.  (Commissioner Staudenmeier N.T. Page 25, Summary Judgment Motion Exhibit "9"; Commissioner Halcovage N.T. Page 19, Summary Judgment Motion Exhibit "8"; Commissioner Hess N.T. Page 21, Summary Judgment Motion Exhibit "10")

There is absolutely no evidence of good faith on the part of the County.  Plaintiffs were fired because of the overtime rules and "federal law".  The County ignored the advice of the head of the Human Resource Department and considered various schemes to avoid paying overtime to the Plaintiffs.  Rather than show a good faith effort or reasonable grounds for believing that it complied with the statute, the evidence of record shows bad faith.  In addition, a Collective Bargaining Agreement was negotiated with AFSCME for Plaintiffs.  (See Summary Judgment Motion Exhibit "15")  Rather than abiding by the Collective Bargaining Agreement, which would have showed some good faith, they ignored the out-of-classification pay rates and continued to pay flat rates as was done in the past.  There is no reasonable basis or grounds for the County to argue that they believed that they were in compliance with the FLSA.  In fact, the Human Resource Director repeatedly warned them otherwise.

### C.   DEFENDANT RETALIATED AGAINST POTHERING AND CLEWS FOR ASSERTING THEIR FLSA RIGHTS.

To establish a *prima facie* case of FLSA retaliation, a plaintiff must show the following: (1) he engaged in activity protected under the FLSA, (2) he subsequently suffered adverse action by his employer, and (3) there was a causal connection between his protected activity and the adverse action.  Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000).  The record

7

clearly shows that Plaintiffs were seeking overtime, an activity protected under the FLSA; that

Plaintiffs Clews and Pothering suffered an adverse action by their dismissal as deputy coroners;

and that the causal connection between their activity and the adverse action is shown in the

meeting minutes and testimony of the County Commissioners.

All three Commissioners testified that Clews and Pothering were terminated because of

the overtime rules.  (Commissioner Halcovage N.T. Page 26, Summary Judgment Motion

Exhibit "8"; Commissioner Staudenmeier N.T. Page 32, Summary Judgment Motion Exhibit

"9"; Commissioner Hess N.T. Pages 28-29, Summary Judgment Motion Exhibit "10")  All three

Commissioners admitted that there was no evidence of disciplinary infractions which would

justify termination.  (Commissioner Halcovage N.T. Page 29, Summary Judgment Motion

Exhibit "8"; Commissioner Staudenmeier N.T. Page 32, Summary Judgment Motion Exhibit

"9"; Commissioner Hess N.T. Pages 28-29, Summary Judgment Motion Exhibit "10")  Dr.

Moylan stated that they were not fired but that they were terminated because he was forced to do

so by County regulations.  (Dr. Moylan N.T. Pages 63-64, Summary Judgment Motion Exhibit

"11")  Defendant cannot argue that termination from a deputy coroner position is not an adverse

action for purposes of maintaining an FLSA retaliation claim.  See Henry v. Wells Remodeling,

LLC, 2019 WL 442305, (N.D. Alabama 2019), copy attached.  See also Blue v. Dunn

Construction, 455 Fed. Appx. 881, 884 (11th Cir. 2011), copy attached.

**D.      DEFENDANT FAILED TO MAINTAIN ACCURATE OR ADEQUATE
         RECORDS.**

The FLSA requires employers to keep proper records of wages, hours, and other

conditions and practices of employment.  The employer is also in a position to know and to

produce the most probative facts concerning the nature and amount of work performed.  Felker

v. Southwestern Emergency Medical Service, Inc., 581 F.Supp.2d 1006 (S.D. Ind. 2008).

8

Where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. To place the burden on the employee of proving damages with specificity would defeat the purpose of the FLSA where the employer's own actions in keeping inadequate or inaccurate records had made the best evidence of such damages unavailable. In such a situation, after an employee produces sufficient evidence to show the amount and extent of that work, the burden shifts to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference to be drawn from the employee's evidence. Brown v. Family Dollar Stores of IN, LP, supra.

The Coroner and County simply did not keep accurate records for the hours worked by Plaintiffs as deputy coroners. Martina Chwastiak repeatedly advised the County over several years that this matter needed to be addressed and that the flat fees were not in accordance with the Wage and Hour Laws. The Coroner changed hours or manipulated the hourly rate in order to avoid overtime issues.

Sharlene Herring, a clerk for the County Coroner, testified that Dr. Moylan would change the hours as submitted by the deputy coroners themselves. (Sharlene Herring N.T. Pages 16-17, Summary Judgment Motion Exhibit "7") She stated that the private transport was $80.00 per trip no matter how many hours it took. She described this process as "he's knocked them down". After some evasive responses in her deposition, Sharlene Herring did admit that Dr. Moylan told her that she cannot turn in more than five (5) hours a week for someone like Deb Detweiler in order to avoid the overtime issues. (Sharlene Herring N.T. Pages 17:18-18:10, Summary Judgment Motion Exhibit "7") She further stated, "No matter how many hours were turned in, he (Moylan) would make sure that it only said five hours for that week, make it work, like…" (Sharlene Herring N.T. Pages 18:25-19:4, Summary Judgment Motion Exhibit "7") Dr. Moylan

specifically instructed Sharlene Herring to use the five hour limitation with regard to Deb

Detweiler.  (Sharlene Herring N.T. Page 19, Summary Judgment Motion Exhibit "7")

Dr. Moylan admits that Sharlene Herring was responsible for forwarding the hours to the

Controller's Office.  (Dr. Moylan N.T. Page 59, Summary Judgment Motion Exhibit "11")

However, he denies instructing her or other employees to submit less time than actually worked.

(Dr. Moylan N.T. Page 55, Summary Judgment Motion Exhibit "11")  The County Controller

actually sent an email to other County Controllers in October of 2016, which stated that a row

officer deliberately lied about how many hours people worked.  (Controller Joy N.T. Pages 38-

41, Summary Judgment Motion Exhibit "12")  He admitted that the row officer he was referring

to was Dr. Moylan.  (Controller Joy N.T. Page 41, Summary Judgment Motion Exhibit "12")

The mere fact that overtime is underreported on the time records is insufficient to defeat

an FLSA claim because the employer carries the burden to keep accurate records and can be

charged with actual or constructive knowledge of an employee's hours when a reasonable

investigation would have revealed that the records were inaccurate.  Wlodynski v. Ryland

Homes of Florida Realty Corp., 2008 WL 2783148 (M.D. Fla. 2008).

Although the finder of fact will ultimately have to determine the number of overtime

hours worked, we believe this Court can rule, as a matter of law, that Defendant failed to

maintain accurate or adequate records for the hours worked as required by the FLSA.

Accordingly, Plaintiffs only have to produce sufficient evidence to show the amount and extent

of their work whereupon the burden shifts to the employer to produce evidence of the precise

amount of work performed or to negate the reasonableness of the inference to be drawn from an

employee's evidence.

**E.  THE "REGULAR RATE" OF PAY SHOULD BE THE OUT-OF-CLASS PAY RATE.  IN THE ALTERNATIVE, THE REGULAR RATE OF PAY SHOULD BE A BLENDED RATE WITH THE JURY DETERMINING THE NUMBER OF HOURS WORKED AS DEPUTY CORONERS.**

Where an employer has failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee bears the consequences of that failure.  Brown v. Family Dollar Stores of IN, LP, supra.  The overtime provisions of the FLSA require an employer to pay covered workers "at a rate of not less than one and one-half times the regular rate at which he is employed."  29 U.S.C.A. § 207(a)(1).  The regular rate of pay, for purposes of calculating overtime compensation under FLSA, is the hourly rate that the employer pays the employee for the normal, non-overtime forty-our workweek.  Fair Labor Standards Act of 1938, § 7, 29 U.S.C.A. § 207(a)(1).  United States Department of Labor v. Fire & Safety Investigation Consulting Services, LLC, 915 F.3d 277 (4th Cir. 2019).

Regulations state that the "regular rate" of pay under the Act cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract.  29 C.F.R. § 778.108.  The regulation goes on to state that the Supreme Court described the regular rate as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed— an "actual fact".  29 C.F.R. § 778.108.  Section 778.108 alone would indicate that Plaintiffs should be paid at a "regular rate" which would be equal to the rate they were paid for their normal non-overtime workweek as fulltime County employees.  Under the FLSA and the facts of this case, there are basically two (2) alternatives for calculating the regular rate:  (1) using the out-of-classification rate under the AFSCME employment contract, or (2) using a blended rate under 29 C.F.R. § 778.115.

1.    **Out-of-Class Under Collective Bargaining Agreement**

Calculation of overtime under the AFSCME contract would provide that Plaintiffs

be paid an "out-of-classification pay" for overtime.  (See Summary Judgment Motion

Exhibit "15")  Under Article 20 of the Collective Bargaining Agreement, an employee

who is assigned by an employer to a lower classification, the person so assigned shall

receive his normal rate of pay.  It is our position that Plaintiffs are entitled to the benefit

of the Collective Bargaining Agreement with the County and should have their overtime

based on their regular rate of pay under the Collective Bargaining Agreement.  The

ultimate question of whether we can calculate overtime based on the out-of-classification

rate required under the Collective Bargaining Agreement depends on whether resolution

of the FLSA claim requires the interpretation or application of a provision of the

Collective Bargaining Agreement.  Rolon v. Lackawanna County, 1 F.Supp.3d 300

(2014).

The Third Circuit has considered this issue under different circumstances.  In

Vadino v. A. Valey Engineers, 903 F.2d 253 (3d Cir. 1990), Vadino argued that his

employer paid him an apprentice rate rather than a journeyman's rate for both non-

overtime hours worked and for purposes of his overtime calculation.  He was actually

making a claim under the Labor Management Relations Act (LMRA) as well as the

FLSA.  The Court held that because of Vadino's argument that he was paid the wrong

rate for work as a pipefitter, his FLSA claim was subject to the collective bargaining

grievance procedure.  It is important to note that in the Vadino case the plaintiff was

actually paid overtime at one and one-half times his apprentice rate.  In our case,

Plaintiffs were not paid any overtime whatsoever.  Our issue is not what rate should be

applied for the same job but what is the "regular rate" which should be applied when calculating overtime for the deputy coroners after working forty (40) hours at a different fulltime job for the County.  There is no established non-overtime rate for deputy coroners, only flat rates and a limited hourly rate if investigations exceed three (3) hours.

There is no dispute about the contract terms in the instant matter.  Martina Chwastiak indicated that the County always paid the higher rate if someone worked out of class pursuant to the AFSCME agreement.  (Martina Chwastiak N.T. Pages 30-32, Summary Judgment Motion Exhibit "3")  She was specifically asked if someone worked out of class at a lower rate based on the AFSCME contract, would she apply the higher rate to overtime.  Her response was, "I would always apply the higher rate in an - - on an hourly basis and give them the higher of the two rates."  (Martina Chwastiak N.T. Page 33, Summary Judgment Motion Exhibit "3")  The Chairman of the Board of Commissioners, George Halcovage, testified that the Human Resource Director would be responsible for the overtime rules being followed.  Commissioner Staudenmeier agreed that Human Resource is in charge of overseeing compliance of the overtime laws.  (Commissioner Staudenmeier N.T. Page 15, Summary Judgment Motion Exhibit "9")  Likewise, Commissioner Hess agreed that the administration was in charge with overseeing the overtime laws.  (Commissioner Hess N.T. Page 16, Summary Judgment Motion Exhibit "10")  The person in charge of enforcing the laws clearly states that overtime should be paid and that it should be paid under the AFSCME contract.

Plaintiffs' FLSA claims do not depend on an interpretation of a disputed Collective Bargaining Agreement.  The Human Resource Director indicated that if this was a straight hourly case she would simply apply the higher rate.  Given the comments

13

of Martina Chwastiak that the out-of-classification pay would normally be used, the County cannot argue that the dispute is as to the interpretation of the Collective Bargaining Agreement.

Employees' rights to minimum wage and overtime pay under the FLSA are separate and distinct from employees' contractual rights arising out of an applicable collective bargaining agreement.  Andrako v. U.S. Steel Corp., 2008 WL 2020176, (W.D.Pa., May 8, 2008) (citing Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 745, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)).  FLSA's "enforcement scheme grants individual employees broad access to the courts … and no exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute."  Barrentine, 450 U.S. at 740, 101 S.Ct. 1437; see also McDonald v. City of West Branch, Mich., 466 U.S. 284, 289, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); Tran v. Tran, 54 F.3d 115 (2d Cir.1995) (reversing lower court's holding that the plaintiff was required to exhaust his arbitral remedy prior to filing his FLSA claims).  As the United States Supreme Court stated in Barrentine v. Arkansas-Best Freight System:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement.  By contract, in filing a lawsuit under [the statute], an employee asserts independent statutory rights accorded by Congress.  The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.  And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

Barrentine, 450 U.S. at 745-746, 101 S.Ct. 1437 (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 49-50, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)).

Given the circumstances of this case, we respectfully submit that any exhaustion of remedies required under the Labor Management and Relations Act should be excused and this case should be allowed to proceed as a claim under the FLSA applying the out-of-classification rate.

### 2.   Blended Rate

Defendant's position is that Plaintiffs worked at different jobs with two (2) different rates and, therefore, a blended rate should be used to calculate any overtime. Calculation of the correct "regular rate" is the linchpin of the FLSA overtime requirement.  O'Brien, et al. v. Town of Agawam, 350 F.3d 279, 294 (1st Cir. 2003)

"An employee who works overtime is entitled to be paid 'at a rate not less than one and one-half times the regular rate at which he is employed.' " Id.  (quoting 29 U.S.C. § 207(a)(1)).  Under the FLSA, the employee's "regular rate" of pay is calculated as the "hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed..."  29 C.F.R. § 778.108.  (citing Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419 (1945)).  "If the employee is employed *solely* on the basis of a single hourly rate, the hourly rate is the 'regular rate.' "  29 C.F.R. § 778.110 (emphasis added).  "If the employee is employed *solely* on a weekly basis," the regular rate is computed based on the number of hours which the salary is intended to compensate.  29 C.F.R. § 778.113 (emphasis added).  That mathematical computation consists of dividing an employee's total remuneration by the number of hours worked for which that compensation was paid.  29 C.F.R. § 778.109.  In other words, calculation of the "regular rate" requires both a numerator (the amount of compensation) and a denominator (the hours worked).

The regulations do address employees who work at two (2) or more rates or two (2) different types of work.  See 29 C.F.R. § 778.115.  This section reads as follows:

> Where an employee in a single workweek works at two or more different types of work for which different non-overtime rates of pay…have been established, his regular rate for that week is the weighted average of such rates.  [T]otal earnings…are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

29 C.F.R. § 778.115

The formula used by the Controller's Office took the gross pay for each employee per period and divided that by the actual hours worked at 911 and the estimated hours worked at the Coroner's Officer in order to come up with what they believe to be a weighted average.

In order to use this blended rate, the County must establish not only that a non-overtime rate for the coroners has been established but also the actual number of hours worked in the Coroner's Office.  As noted earlier, the County is estimating hours worked based on a non-overtime rate of $15.00 an hour, which has not been an established rate between the parties.  The only reference to the $15.00 an hour is for investigations which take longer than three (3) hours.  The Supreme Court has held that blended pay schemes that fail to account for the actual number of regular and overtime hours that an employee works are impermissible replacements for traditional overtime pay rates under the FLSA.  See 145 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 203-209, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947).  See also United States Department of Labor v. Fire & Safety Investigation Consulting Services, LLC, supra.

Allowing the County to estimate hours worked in the Coroner's Office by simply dividing the amount paid for coroner work by fifteen (15) will always show a regular rate of $15.00 an hour for coroner's work.  That type of equation allows the County to establish a regular rate of $15.00 an hour for work of the deputy coroners even though there was never a firm hourly rate established for all of the coroner work.  In addition, it does not allow for a finding of fact by the jury as to the actual number of hours worked by Plaintiffs for the Coroner.  We believe that this factual determination of hours worked should be made by the jury and not by the County simply dividing coroner pay by fifteen (15) for any given pay period.  By allowing this type of calculation to determine the hours worked, we respectfully submit that the blended rate fails to account for the actual number of regular and overtime hours Plaintiffs worked.

## V.  **SUMMARY**

Plaintiffs respectfully request that partial summary judgment be entered in their favor and against Defendant for the reasons set forth above.

Respectfully submitted,

Date: November 12, 2019

By: /s/Edward M. Brennan

Edward M. Brennan, Esquire
306 Mahantongo Street
Pottsville, PA  17901
(570) 628-2461
(570) 628-4498 – fax
emb@attybrennan.com
Attorney I.D. No. PA38770
Attorney for Plaintiffs

17

2019 WL 142305
United States District Court, N.D.
Alabama, Southern Division.

John **HENRY**, Plaintiff,

v.

**WELLS REMODELING**, LLC, et al., Defendants.

Case No.: 2:16-cv-00511-SGC
|
Signed 01/09/2019

**Attorneys and Law Firms**

Heather N. Leonard, Heather Leonard PC, Birmingham, AL, for Plaintiff.

N. DeWayne Pope, DeWayne Pope LLC, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION & ORDER [1]

STACI G. CORNELIUS, U.S. MAGISTRATE JUDGE

**\*1** John Henry commenced this action against Wells Remodeling, LLC, and Andrew Wells, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (Doc. 1). Pending before the undersigned is the defendants' second motion for summary judgment. (Doc. 43). For the reasons discussed below, the motion is due to be denied in part and granted in part.

## I. Facts [2]

Wells Remodeling, LLC, d/b/a Alabama ReBath ("Alabama ReBath") provides bathroom remodeling services to residential customers. (Doc. 44-7 at 1). Andrew Wells ("Wells") is the president of Alabama ReBath. (*Id.*). Sometime during the first half of 2015, Alabama ReBath hired John Henry ("Henry") as an installer and agreed to pay him $20 per hour. (*Id.* at 2; Doc. 44-1 at 39). [3]

Henry started his work days at the Alabama ReBath office. On his arrival, Henry typically would unload demolition debris from his company van and load materials required for that day's job. (Doc. 44-1 at 7-8; Doc. 44-3 at 21-22; Doc. 46-1 at 1). [4] Alabama ReBath did not pay Henry for the actual amount of time he spent performing these tasks (Doc. 44-7

at 2-3), and that time is not explicitly recorded on Henry's time sheets or pay sheets (*see, e.g.,* Doc. 44-5 at 42, 62). The defendants claim that based on Wells' determination an installer could routinely unload demolition debris and load job materials in 15-30 minutes and that these tasks should rarely take more than 45 minutes to complete, Alabama ReBath paid installers for 45 minutes of "load/unload time" for each phase of a job. (Doc. 44-7 at 2-3). Wells testified that for Henry, this translated to $15. (*Id.* at 3). [5] Henry testified it typically took between 45 minutes and one hour to unload debris and load job materials and that it might have taken more than one-and-one-half hours to perform these tasks on some days. (Doc. 46-1 at 1; Doc. 46-1 at 1).

If Henry was to receive compensation for load/unload time on a given day, "yes" was recorded in a field for load/unload time on his pay sheet. (*See, e.g.,* Doc. 44-5 at 62). Henry's pay sheets for May and June 2015 indicate he was paid $15 for load/unload time on days he was credited with that time. (*Id.* at 62-66). However, Henry's pay sheets for July and August 2015 indicate Henry was paid $11.25 for that time. (*Id.* at 67-76). Whatever Henry was paid for load/unload time, neither the estimated 45 minutes required to unload debris and load job materials nor the actual time Henry spent performing these tasks appears to have been counted towards Henry's overtime. (*See, e.g., id.* at 62). Henry's pay sheets appear to calculate straight time and overtime based solely on time spent on the job site, with load/unload time added on top of that calculation. (*See, e.g., id.*). Henry's pay sheets for May through August 2015 show he worked 40 or more hours on the job site during some weeks. (*Id.* at 62, 63, 65, 66, 68-70, 74-76).

**\*2** After unloading demolition debris and loading job materials, Henry departed the Alabama ReBath office for the job site in his company van. (Doc. 46-1 at 1). In addition to job materials, Henry carried personal and company tools in the van. (Doc. 44-7 at 5). Henry claims he was not always paid for travel time from the Alabama ReBath office to the job site. (Doc. 46-1 at 1). He further claims that when was paid for this time, his compensation was based on an estimate derived from Google Maps, not his actual travel time, which was greater than the estimated time. (*Id.* at 1-2). However determined, travel time from the Alabama ReBath office to the job site, like load/unload time, does not appear to have been counted towards Henry's overtime. (*See, e.g.,* Doc. 44-5 at 61).

Henry typically returned his company van to the Alabama ReBath office at the end of the day. (Doc. 44-1 at 20). The

defendants did not compensate Henry at all for return travel time. (Doc. 44-7 at 3). Henry testified the defendants required him to return his company van to the Alabama ReBath office at the end of the day. (Doc. 44-1 at 20; Doc. 46-1 at 2). Wells testified Henry could drive the van home at the end of the day if his home was closer to the job site than the Alabama ReBath office. (Doc. 44-7 at 5). David Wilkinson, who was employed by Alabama ReBath in a supervisory role, testified Henry could drive his company van home at the end of the day on occasion if the job site was close to his home, but that otherwise he had to bring the van back to the Alabama ReBath office. (Doc. 44-6 at 16; Doc. 44-10 at 17). Henry acknowledged he sought and received permission to drive the van home on two or three occasions. (Doc. 44-1 at 11; Doc. 46-1 at 2). For some period of time in early-to-mid September 2015, Henry did not work while his company van was in the shop for repairs. (Doc. 44-8 at 122-28).

Henry complained to Wells and Wilkinson about his compensation for load/unload time and travel time. (Doc. 46-1 at 2-3; Doc. 51 at 28). [6] Henry testified Wells appeared frustrated and upset regarding Henry's complaints. (Doc. 46-1 at 2-3). [7] Henry claims that in retaliation for his complaints, Wells informed him and his co-workers they would not be compensated for load/unload time at all. (Doc. 44-1 at 21; Doc. 46-1 at 2; Doc. 47 at 23). However, Henry's pay sheets for the weeks leading up to September 1, 2015, show he was paid for some load/unload time during each of those weeks. (Doc. 44-5 at 62-76).

Beginning on September 1, 2015, Alabama ReBath paid Henry on a commission, rather than an hourly basis. (Doc. 44-7 at 4). Henry claims he never wanted to be paid on commission, which resulted in a smaller rate of pay than his hourly rate. (Doc. 44-1 at 10-11; Doc. 46-1 at 3; Doc. 47 at 10). According to Henry, he was transitioned to commission-based pay in retaliation for his complaints regarding his compensation for load/unload time and travel time. (Doc. 46-1 at 2-3; Doc. 47 at 23). In support of their first motion for summary judgment, the defendants calculated Henry's rate of pay for each of the six weeks he was compensated on a commission by dividing his hours for each week into his compensation for each week. (Doc. 36 at 10). In all but two of those weeks, Henry's rate of pay exceeded his $20 hourly rate. (Id.). Henry did not dispute the accuracy of this calculation (Doc. 38), which formed a basis for the entry of summary judgment in the defendants' favor on Henry's unpaid wages and overtime claims for the period September 1, 2015, to October 26, 2015 (Doc. 42).

**\*3** Wells terminated Henry on October 26, 2015. (Doc. 44-3 at 52; Doc. 44-7 at 2). Wells did not give Henry a reason for his termination. (Doc. 44-1 at 16; Doc. 44-3 at 54). Henry testified he did not ask for one. (Doc. 44-1 at 16). Wilkinson testified Wells did not have any conversation with him about why Henry was no longer working for Alabama ReBath. (Doc. 44-10 at 20, 28).

Henry claims Wells terminated him because he continued to complain about his compensation for load/unload time and travel time and about his transition to commission-based pay. (Doc. 44-1 at 23; Doc. 46-1 at 3). Wells denied he terminated Henry because of any complaints Henry made regarding pay. (Doc. 44-3 at 55). He testified he terminated Henry because (1) Henry failed to communicate with him and other Alabama ReBath employees for purposes of scheduling, (2) there were frequent problems with Henry's jobs, for which Henry refused to take responsibility, (3) Henry rebuffed Wells' efforts to help him learn how to do his job more effectively and efficiently, and (4) Henry generally had a poor attitude. (Id. at 52-55).

Wells did not discipline Henry for issues regarding his communication, job performance, or attitude pursuant to a progressive discipline policy included in the Alabama ReBath Employee Handbook prior to terminating him. (Doc. 44-3 at 54). A prefatory paragraph to the policy states, "progressive discipline is not appropriate in every case and Alabama Re-Bath will review each case on its own facts." (Doc. 44-4 at 47 (emphasis in original) ). A note at the end of the policy states, "[t]he progressive discipline procedure outlined here is a general guideline only and the management of Alabama Re-Bath is **NOT required** to follow this procedure in every case." (Id. at 50 (emphasis in original) ). Wells testified Alabama ReBath had an informal and liberal approach to discipline at the time of Henry's employment. (Doc. 44-3 at 18-19).

Henry testified neither Wells nor Wilkinson ever discussed with him issues regarding communication, timely completion of jobs, scheduling, job performance, or attitude. (Doc. 44-1 at 11-12; Doc. 46-1 at 3). He notes that during a meeting to discuss his transition to commission-based pay, he told Wells there were no complaints regarding his jobs and that his jobs were perfect. (Doc. 46-1 at 2). Wells responded by mentioning a customer complaint but noting he was not trying to blame Henry for the complaint, which he suspected had something to do with "corporate." (Id.).

Wilkinson testified he personally did not have frustrations with Henry's communication (Doc. 44-10 at 16), could only guess at what specific issues Wells had with Henry's communication (*id.*),[8] and himself did not receive complaints regarding the quality of Henry's work (*id.* at 24). However, he also testified Wells was frustrated with Henry's job performance in that it took Henry longer than scheduled to complete jobs, which made it difficult to schedule Henry for jobs, and that there were "a lot of problems" on Henry's jobs. (Doc. 44-10 at 12, 14-16). Text messages from Wells to Henry in October 2015 confirm Wells was frustrated with Henry's communication as it related to scheduling. On Friday, October 2, 2015, after Henry told Wells he planned to have a customer sign paperwork on the following Monday morning at 8:00 A.M., the following exchange ensued:

**Wells:** and what about monday's schedule? and why couldn't you discuss this earlier? this is why we struggle with scheduling and why we don't schedule ahead. i can't have surprises. monday expects you to be there around 8. so how do we do both? i tend to be okay with a lot of things as long as they are not surprises because i can't plan around surprises. so i would like to know your plan for Monday being you have to be at two places at once. how do we reconcile this?

**Henry:** Monday is not a problem as Gloria is aware I am coming first thing to have that signed and I will call the customer and make them aware of when I will be arriving. I will take care of my end and I understand how frustrating that can be to you worrying about it....

*4 ...

**Wells:** i think you very well understand how unforeseen items can cause a schedule delay ... right? ... i've cleared out most of our issues, but right now what's left is and seems to still be is communication[.]

...

**Wells:** so the next thing to address is communication. you have to communicate items like this with me or us. if there was an issue with gloria, it would've been nice to know wednesday or as soon as you know so we can address it together[.]

(Doc. 44-9 at 3-4). On Friday, October 16, 2015, after Henry told Wells he would be available for another job on the following Tuesday, the following exchange ensued:

**Wells:** ugh. we already scheduled you monday[.] why would you say this on friday[.] last week you told us you were good for monday[.] i mean this week on wed[.]

**Henry:** I'm in the bathroom.

**Wells:** are you joking or serious. i need to know what to do as it's already scheduled and unsure if i now have to unscheduled this[.]

**Henry:** Is Tuesday out of the question?

**Wells:** well we just booked him. so yes. otherwise we keep doing the very thing we have been trying so hard to avoid. the whole point of not scheduling ahead unless you say something was to keep us from rescheduling. it takes a lot of time chasing them around all the time. and the uncertainty of the rest of the week makes it difficult to schedule anything else[.] now that you finally told us ahead like we asked, we did what we said which is we scheduled ahead. now you're asking us to undo this[.]

...

**Wells:** what would solve my problem in scheduling is communication, in a nut shell[.] you communicate, we schedule. you become predictable, we schedule without having to communicate[.] ... help me with communication. i don't know how to fix this but i'm doing the best i can[.]

(*Id.* at 8-10). Text messages from Wells to Henry in October 2015 also show Wells believed there to be problems with the quality of Henry's work and that Henry denied responsibility for the alleged problems. On October 26, 2015, the day of Henry's termination, Wells and Henry exchanged text messages regarding one customer's squeaky floor and another's plumbing problem:

**Henry:** .... [the customer's floor] did not squeak until a month or so later. Was not squeaking directly after install. This problem had nothing to do with my install...."

**Wells:** she called it in the day or two later. we were out there twice before i had sent you guys on friday[.] we've been dealing with it since. you just didn't know about it until about a month later[.]"

...

**Wells:** bottom line ... it should've been taken care of and it's easy to say it didn't squeak then (except it actually did).

for it to happen exactly right after we were working in there is too much of a coincidence[.]

...

**Wells:** .... Abbot has called back and she's getting back flow of water filling up her sink. it seems possible you may have had trash in the sink that clogged it up as it didn't happen before we did her job.

**Henry:** Abbot's problem is in the wall no possible way trash could get in that area.

(Doc. 44-9 at 19-20).

## II. Procedural History

**\*5** In their first motion for summary judgment, the defendants sought dismissal of Henry's claims for unpaid wages and overtime for the period September 1, 2015, to October 26, 2015, during which the defendants paid Henry on a commission basis, on the grounds those claims were subject to the "retail or service establishment" exemption codified at 29 U.S.C. § 207(i). (Doc. 35). Henry conceded the argument. (Doc. 38). The undersigned granted the defendants' motion, dismissing Henry's claims for unpaid wages and overtime for the period September 1, 2015, to October 26, 2015, with prejudice. (Doc. 42).

Through the presently pending motion, the defendants seek summary judgment on Henry's claims for unpaid wages and overtime compensation related to "load/unload time" and travel time incurred prior to September 1, 2015, in violation of 29 U.S.C. §§ 206 and 207 and unlawful retaliation in violation of 29 U.S.C. § 215(a)(3).

## III. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp.*, 477 U.S. at 323. If the movant fails to carry its initial burden, the motion must be denied, and the court need not consider what showing the non-movant has made. *Fitzpatrick v. City of Atlanta*, 2 F.3d

1112, 1116 (11th Cir. 1993). Otherwise, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute as to a material fact for trial. *Celotex Corp.*, 477 U.S. at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if there is a real basis in the record for the dispute, *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005), and the evidence is such that a reasonable jury could return a verdict for the non-movant, *Anderson*. 477 U.S. at 248. If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick*, 2 F.3d at 115.

## IV. Discussion

The defendants seek summary judgment on Henry's claims for load/unload time and travel time from the Alabama ReBath office to the job site on the ground Henry's pay sheets show he was compensated for that time. (Doc. 51 at 21-23). They claim the Portal-to-Portal Act, which amended the FLSA, excepts Alabama ReBath from compensating Henry for return travel time. (*Id.* at 24-26). Finally, they claim Henry has failed to make out a *prima facie* case of retaliation and that they have articulated legitimate, non-retaliatory reasons for Henry's termination that Henry cannot rebut as pretext. (*Id.* at 27-32).

### A. Load/Unload Time & Travel Time to Job Site

In his interrogatory responses, Henry identified a number of days as to which the job start time recorded on his time sheet was earlier than the job start time recorded on his pay sheet. (Doc. 44-2 at 10-11). He claimed he did not receive compensation for the difference, totaling 42 hours, which represented time he spent unloading demolition debris and loading job materials. (*Id.*). The defendants claim Henry has simply misunderstood how to read his pay sheets, which recorded load/unload time and travel time separately from time spent on the job site. (Doc. 51 at 21). According to the defendants, their records show Henry was not yet employed by Alabama ReBath on days as to which he claims a total of 6.5 hours owed and that he was paid for a total of 34.66 hours of load/unload time and travel time on the remaining days. (*Id.* at 21-23). [9] The defendants' calculation is based on an allotment of 45 minutes of load/unload time to

Henry, irrespective of the actual time Henry spent unloading demolition debris and loading job materials. (*See id.*). For purposes of the defendants' motion, the dispositive question is whether the defendants, as the movants, have shown payment of Henry for load/unload time in this manner complied with the FLSA's minimum wage and overtime requirements. As discussed below, they have not carried their burden on this issue.

**\*6** While the FLSA does not require an employer to compensate an employee on an hourly basis but, rather, permits an employer to compensate an employee on a piece-rate, salary, commission, or other basis, an employer cannot necessarily pay an employee on one of these alternative bases without consideration of the hours actually worked by the employee. 29 C.F.R. § 778.109.[10] Where an employer compensates an employee on an other-than-hourly basis, compliance with the FLSA's minimum wage and overtime requirements is generally determined by reference to an employee's "regular rate of pay," and that rate is determined by reference to the hours actually worked by the employee. *Id.* For example, if an employee is compensated solely on an hourly basis, his regular rate is his hourly rate. 29 C.F.R. § 778.110. If an employee is paid a flat sum for doing a particular job without regard to the number of hours spent on the job, his regular rate is the total of all sums received at the job rate for a given work week divided by the total hours actually worked during that week. 29 C.F.R. § 778.112. If an employee is compensated on the basis of multiple rates, his regular rate is his total earnings from all rates for a given work week divided by his total hours worked during that week. 29 C.F.R. § 778.115; *see also* § 778.109. However computed, the employee's regular rate of pay must not fall below the statutory minimum wage, and the employee must be compensated at one-and-one-half times that rate for hours worked in excess of forty. 29 C.F.R. § 778.107; *see also* 29 U.S.C. §§ 206, 207; *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 667 (E.D. Ark. 2011) (holding that employer cannot compensate employees based on amount of time a reasonably efficient employee would spend donning and doffing smocks if actual time is greater and result is that compensation falls below FLSA's minimum wage and overtime requirements).[11]

As the movants, the defendants bear the burden of demonstrating their entitlement to summary judgment – that there are no genuine issues of material fact regarding Henry's compensation for load/unload time or whether this compensation complied with the FLSA's minimum wage

and overtime requirements. Specifically, that means (1) calculating a regular rate of pay for each week Henry worked, based on his hourly compensation, flat-rate compensation for load/unload time, and the number of hours he actually worked at both of these rates, (2) confirming that rate did not fall below the statutory minimum wage, and (3) showing that Henry was compensated at one-and-one half times that rate for hours worked in excess of forty. Because the defendants have not done this, they have fallen short of meeting their burden. *See Gaytan v. G&G Landscaping Constr., Inc.*, 145 F. Supp. 3d 320, 326-27 (D.N.J. 2015) (denying employer's motion for summary judgment where employer neglected to address question as to whether its method of overtime compensation complied with FLSA); *Wirtz v. Williams*, 369 F.2d 783, 785 (5th Cir. 1966) (holding district court's conclusion employer had complied with FLSA's overtime requirements was clearly erroneous where employer paid employees based on estimated hours and kept no record of hours actually worked).

Although the burden is the defendants, in the interest of an efficient resolution of the parties' dispute and because, ultimately, liability under the FLSA is a question of law, *Birdwell v. City of Gadsden*, 970 F.2d 802, 808 (11th Cir. 1992) ("It is for the court to determine if a set of facts gives rise to liability [under the FLSA]; it is for the jury to determine if those facts exist."), the undersigned has scrutinized the evidence submitted by both parties and attempted to identify undisputed facts from which it could be determined whether Henry's compensation for load/unload time was FLSA-compliant. The answer to the question turns on the number of hours Henry actually spent at the Alabama ReBath office unloading demolition debris and loading job materials in a given work week and the compensation he received for that time. *See* discussion *supra*. Neither Henry's time sheets nor his pay sheets explicitly record the actual time Henry spent unloading debris and loading materials on a given day. To the extent the time could be deduced from other recorded information, the undersigned declines to undertake this time-consuming analysis, given other questions of fact would nonetheless preclude summary judgment.

**\*7** First, while Wells testified Henry was paid $15 for load/unload time (Doc. 44-7 at 3) and Henry's pay sheets for May and June 2015 indicate the same (Doc. 44-5 at 62-66), Henry's pay sheets for July and August 2015 indicate he was paid $11.25 for that time (*id.* at 67-76). At least with respect to July and August 2015, determination of which rate is accurate – the rate Wells testified Henry was paid for load/unload time or

the rate recorded on Henry's pay sheets as paid for that time – is necessary to determine Henry's regular rate of pay.

Second, even assuming Henry spent no more than 45 minutes unloading demolition debris and loading job materials and was compensated $15 for that time, there is some question whether that compensation complied with the FLSA's overtime requirements. Henry's pay sheets appear to calculate straight time and overtime based solely on time spent on the job site, with load/unload time added on top of that calculation. (*See, e.g.,* Doc. 44-5 at 62). As a general rule, all compensable time must be considered in determining whether overtime compensation is owed. *See* 29 C.F.R. § 790.6 ("Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked...."); 29 C.F.R. § 778.315 ("In determining the number of hours for which overtime compensation is due, all hours worked [ ] by an employee for an employer in a particular workweek must be counted."); 29 C.F.R. § 785.38 ("Time spent by an employee in travel as part of his principal activity ... must be counted as hours worked."); *Mendez v. Radec Corp.,* 232 F.R.D. 78, 88 (W.D.N.Y. 2005) ("[C]ompensable travel time is to be included in determining the number of hours an employee has worked in a given week.... There is no basis to treat travel time differently from employees' other work-related activites, and those hours count in determining whether the employee is entitled to overtime."); *Kroll v. Home Depot U.S.A., Inc.,* 2003 WL 23332905, at *4 (S.D. Ga. Aug. 20, 2003) (holding that employee would be entitled to overtime pay for compensable travel time that occurred during week in which she worked more than forty hours). To the extent Henry's hours on the job site exceeded 40 in a given week or those hours together with the hours Henry spent unloading demolition debris and loading job materials exceeded 40 – and there is evidence they did (Doc. 44-5 at 62, 63, 65, 66, 68-70, 74-76) – Henry would be due overtime compensation for load/unload time, absent a valid argument from the defendants to the contrary. The same is true with respect to Henry's travel time from the Alabama ReBath office to the job site.

For the foregoing reasons, the defendants' motion for summary judgment on Henry's claims for load/unload time and travel time to the job site are due to be denied.

### B. Return Travel Time

Under the Portal-to-Portal Act, which amended the FLSA, an employer is not required to pay an employee for (1)

"traveling to and from the actual place of performance of the principal activity or activities which [the] employee is employed to perform" or (2) "activities which are preliminary to or postliminary to [the employee's] principal activity or activities." 29 U.S.C. § 254(a).

The term "principal activities" includes all activities that are an "integral and indispensable part of the principal activities." *IBP, Inc. v. Alvarez,* 546 U.S. 21, 30 (2005) (quoting *Steiner v. Mitchell,* 350 U.S. 247, 256 (1956) ). Therefore, while ordinary home-to-work and work-to-home travel is not compensable, travel that is an integral and indispensable part of an employee's principal activities is compensable. *See Llorca v. Sheriff, Collier Cty., Florida,* 893 F.3d 1319, 1324 (11th Cir. 2018) (holding that in the Eleventh Circuit, "commuting time and other preliminary and postliminary activities are compensable only if they are both an integral <u>and</u> indispensable part of the principal activities" (emphasis in original) ); *Preston v. Settle Down Enterprises, Inc.,* 90 F. Supp. 2d 1267, 1279 (N.D. Ga. 2000) (noting travel time is compensable only if it is a principal activity of the employee). An activity such as travel is integral and indispensable to an employee's principal activities if it "is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform [the] principal activities." *Integrity Staffing Sols., Inc. v. Busk,* 135 S. Ct. 513, 517 (U.S. 2014).

**\*8** In *Integrity Staffing,* the United States Supreme Court emphasized the integral-and-indispensable test is tied to the productive work an employee is employed to perform and held that the United States Court of Appeals for the Ninth Circuit had erred in focusing on whether an employer required a particular activity. *Id.* at 519. According to the defendants, this calls into doubt the decision of the United States Court of Appeals for the Eleventh Circuit in *Burton v. Hillsborough Cty., Florida,* 181 F. App'x 829 (11th Cir. 2006), on which Henry relies to support his claim the defendants were required to pay him for return travel time because they mandated he leave his company van at the Alabama ReBath office at the end of the day. (Doc. 52 at 9 n.37). In that case, the circuit court held that "if an employee driving an employer-owned car is *required* to return to the employer's premises after a day's work prior to returning home, that time is compensable under the FLSA." *Id.* at 835 (emphasis in original). Although the Eleventh Circuit has not expressly addressed *Burton* following *Integrity Staffing,* it has noted that "the fact that an employer requires or benefits from the activity at issue does not establish that the activity is integral and indispensable."

*Llorca*, 893 F.3d at 1324 (citing *Integrity Staffing*, 135 S. Ct. at 519). *See also Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1370 (S.D. Ga. 2015) (noting that in *Integrity Staffing*, the Supreme Court rejected tests like the one articulated in *Burton* to the extent they focus on whether an employer required a particular activity). However, persuasive authority suggests it is not irrelevant, either.

In *Meeks v. Pasco Cty. Sheriff*, a deputy sheriff sought overtime compensation for time spent transporting his patrol car between a sheriff's patrol division office and his patrol zone. 688 F. App'x 714, 716 (11th Cir. 2017). The deputy sheriff was not allowed to store the car at home but, rather, was required to store it at a sheriff's patrol division office because he lived more than fifteen miles outside the county. *Id.* Citing *Integrity Staffing*, the Eleventh Circuit held that the travel time was an integral and indispensable part of the deputy sheriff's principal activities – his patrol duties – because he relied on the patrol car to maintain contact with the sheriff and respond to calls assigned by the sheriff and could not have patrolled his zone without it. *Id.* at 717. In other words, although the requirement that the deputy sheriff store his patrol car at a designated location may not have been sufficient to render the time spent transporting it between that location and his patrol zone compensable, it was relevant to the extent the car was essential to the deputy sheriff's job; the deputy sheriff had to have the car, and because his employer required it to be stored at a designated location, he had to transport it between that location and his patrol zone.

The regulations promulgated by the Department of Labor to implement the FLSA lend support to the conclusion an employer's requirement may render travel time compensable. *See* 29 C.F.R. § 785.38 ("If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel is not hours worked.").

Here, evidence Henry carried job materials and personal and company tools in his company van (Doc. 44-7 at 5) and was not able to work for some period of time in early-to-mid September 2015 while the van was in the shop for repairs (Doc. 44-8 at 122-28) suggests Henry relied on the van to transport materials to and from the job site and could not have performed his principal activity – installing bathrooms – without it. Moreover, there is conflicting testimony as to

whether the defendants required Henry to return his company van to the Alabama ReBath office at the end of the day. (Doc. 44-1 at 20; Doc. 44-6 at 16; Doc. 44-7 at 5; Doc. 46-1 at 2; Doc. 44-10 at 17). Resolution of these factual issues is necessary to determine whether Henry's return travel time is compensable under the FLSA. Accordingly, the defendants' motion for summary judgment on this claim is due to be denied.

### C. Retaliation

**\*9** The FLSA protects an employee against retaliation for asserting his rights under the statute. *See* 29 U.S.C. § 215(a)(3). To establish a *prima facie* case of FLSA retaliation, a plaintiff must show the following: (1) he engaged in activity protected under the FLSA, (2) he subsequently suffered adverse action by his employer, and (3) there was a causal connection between his protected activity and the adverse action. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). If the plaintiff makes this *prima facie* showing, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its adverse action. *See id.* If the employer is able to do so, the burden shifts back to the plaintiff to demonstrate the proffered reason is pretext for retaliation. *See id.; see also Johnson v. Advertiser Co.*, 778 F. Supp. 2d 1270, 1277 (M.D. Ala. 2011) (citing *Wolf* for proposition that "[i]n the Eleventh Circuit, retaliation claims under the FLSA are analyzed under the burden-shifting framework employed by courts in cases brought under Title VII of the Civil Rights Act"). If the plaintiff fails to demonstrate a genuine dispute as to a material fact regarding pretext, the employer is entitled to summary judgment on the retaliation claim. *Johnson*, 778 F. Supp. 2d at 1277 (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) ).

Henry claims that in retaliation for his continued complaints regarding his compensation, the defendants first eliminated compensation for all load/unload time, then transitioned him to commission-based pay, and finally terminated his employment. (Doc. 44-1 at 10-11, 21, 23; Doc. 46-1 at 2-3; Doc. 47 at 23). The defendants argue Henry's complaints did not rise to the level of activity protected by the FLSA; the acts, other than termination, of which Henry complains are not adverse for purposes of maintaining an FLSA retaliation claim;[12] Henry cannot demonstrate a causal connection between his complaints and his termination; and they have articulated legitimate, non-retaliatory reasons for Henry's termination that Henry cannot rebut as pretext. (Doc. 51 at 26-32).

### 1. Elimination of Compensation for Load/Unload Time

Henry is not specific as to when he claims the defendants eliminated compensation for all load/unload time. To the extent he claims the defendants took this action prior to September 1, 2015, his pay sheets refute the claim. Henry's pay sheets for the weeks leading up to September 1, 2015, show Henry was paid for some load/unload time during each of those weeks. (Doc. 44-5 at 62-76). To the extent Henry claims the defendants eliminated compensation for all load/unload time on or after September 1, 2015, Henry has conceded he was properly compensated between that date and his termination on October 26, 2015 (Doc. 38), as a result of which any such action cannot have been adverse for purposes of maintaining an FLSA retaliation claim.

### 2. Transition to Commission Compensation

Henry claims his transition to commission-based pay was adverse because he never wanted to be paid on commission and his commission-based rate of pay was smaller than his hourly rate. (Doc. 44-1 at 10-11; Doc. 46-1 at 3; 47 at 10). "[N]ot everything that makes an employee unhappy is an actionable adverse employment action." *Bass v. Bd. of Cty. Comm'rs, Orange County, Florida*, 256 F.3d 1095, 1118 (11th Cir. 2001) (internal quotation marks omitted), *overruled in part on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). To be adverse, conduct falling short of termination, failure to hire, or demotion " 'must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee.' " *Blue v. Dunn Const. Co.*, 453 F. App'x 881, 884 (11th Cir. 2011) (quoting *Crawford*, 529 F.3d at 970). In other words, the mere fact Henry did not want to be paid on commission does not make his transition to commission-based pay an adverse action. Moreover, his claim the transition negatively affected his rate of pay is refuted by evidence he did not contest. In support of their first motion for summary judgment, the defendants calculated Henry's rate of pay for each of the six weeks he was compensated on a commission basis by dividing his hours for each week into his compensation for each week. (Doc. 36 at 10). In all but two of those weeks, Henry's rate of pay exceeded his $20 hourly rate. (*Id.*). Henry did not dispute the accuracy of this calculation (Doc. 38), which formed a basis for the entry

of summary judgment in the defendants' favor on Henry's unpaid wages and overtime claims for the period September 1, 2015, to October 26, 2015 (Doc. 42). Accordingly, Henry's transition to commission-based pay was not an adverse action for purposes of maintaining an FLSA retaliation claim.

### 3. Termination

*10 The defendants do not argue, and it is beyond dispute, termination is an adverse action for purposes of maintaining an FLSA retaliation claim. *See Blue*, 453 F. App'x at 884 (identifying termination as adverse employment action). However, this aspect of Henry's FLSA retaliation claim fails, as well, because the defendants have articulated legitimate, non-retaliatory reasons for Henry's termination that Henry has failed to rebut as pretext.

Wells denied he terminated Henry because of any complaints Henry made regarding pay. (Doc. 44-3 at 55). Wells testified he terminated Henry for reasons that included Henry's lack of communication, which affected scheduling, and problems with the quality of Henry's work for which Henry refused to take responsibility. (*Id.* at 52-55). These are legitimate, non-retaliatory reasons for terminating an employee. *See Penaloza v. Target Corp.*, 2012 WL 6721011, at *10 (M.D. Fla. Dec. 27, 2012) ("Poor job performance ... is a legitimate, non-discriminatory reason for adverse employment action."), *aff'd* 549 F. App'x 844 (11th Cir. 2013); *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, x (holding that employee's interpersonal and communication problems were legitimate, non-discriminatory reasons for his termination); *Brown v. Ohio State Univ.*, 616 F. Supp. 2d 740, 751 (S.D. Ohio 2009) (holding that failure to accept problems within her responsibility, untimely completion of assignments, and poor communication are legitimate, non-discriminatory reasons for an employee's termination), *aff'd*, 385 F. App'x 486 (6th Cir. 2010). Accordingly, the burden shifts to Henry to demonstrate a genuine issue of material fact as to whether the defendants' proffered reasons for his termination are pretext. *See Johnson*, 778 F. Supp. 2d at 1277.

To demonstrate pretext, a plaintiff "must produce sufficient evidence for a reasonable fact finder to conclude that a retaliatory reason for the adverse employment action is more likely or that each of the employer's preferred reasons for the adverse employment action is unworthy of credence." *Id.* at 1281 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Jackson v. Ala. State Tenure Comm'n*, 405

F.3d 1277, 1289 (11th Cir. 2005); *Chapman v. Al Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) ); *see also Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823-24 (11th Cir. 2008). " 'Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it.' " *Raspanti*, 266 F. App'x at 824 (quoting *Chapman*, 229 F.3d at 1030).

Henry first argues the defendants' proffered reasons for his termination are pretext because the defendants never discussed with him problems with communication, scheduling, job performance, or attitude before dismissing him. (Doc. 47 at 23-26). If true, this might create an inference of pretext. *See Stanfield v. Answering Serv., Inc.*, 867 F.2d 1290, 1294 (11th Cir. 1989) (holding that lack of complaints or disciplinary reports in employee's personnel file could support finding of pretext); *but see Wascura v. City of South Miami*, 257 F.3d 1238, 1245-46 (11th Cir. 2001) (discounting lack of such evidence where there was no formal review process for employee). However, text messages exchanged between Wells and Henry refute Henry's claim the defendants did not discuss communication, scheduling, and job performance issues with him. (Doc. 44-9 at 3-4, 8-10). Henry does not dispute the authenticity of these messages. Moreover, Wilkinson testified Wells was frustrated with Henry's job performance in that it took Henry longer than scheduled to complete jobs, which made it difficult to schedule Henry for jobs, and there were "a lot of problems" on Henry's jobs. (Doc. 44-10 at 12, 14-16). That Wilkinson personally did not have frustrations with Henry's communication (*see id.* at 16) or receive complaints about the quality of Henry's work (*see id.* at 24) is not sufficiently probative of pretext, given the evidence, including Wilkinson's own testimony, Wells was frustrated with Henry's job performance for a variety of reasons. This evidence also diminishes any probative value that could otherwise be assigned to a single incident identified by Henry where Wells told Henry he suspected "corporate," not Henry, was to blame for a problem with one of Henry's jobs. (*See* Doc. 46-1 at 2).

 *11 Henry next argues the defendants' proffered reasons for his termination are pretext because he was not disciplined in accordance with Alabama ReBath's progressive discipline policy. (Doc. 47 at 26-27). An employer's departure from normal procedures may evidence pretext. *See Bass*, 256 F.3d at 1108 ("An employer's violation of its own normal hiring procedure may be evidence of pretext."); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th

Cir. 2006) (holding that employer's issuance of separation notice twelve days after employee's termination, when usual practice was to prepare separation notice within one or two days of termination, was evidence of pretext). However, the Alabama ReBath policy is peppered with language, some in emphasized font, making it clear it is not strictly applied (*see* Doc. 44-4 at 47, 50), and Wells testified Alabama ReBath had an informal and liberal approach to discipline at the time of Henry's employment (Doc. 44-3 at 18-19). For these reasons, that Henry was not disciplined in accordance with Alabama ReBath's progressive discipline policy prior to his termination does not cast doubt on the defendants' proffered reasons for that termination.

Finally, Henry argues the defendants' proffered reasons for his termination are pretext because they did not give him a reason for his termination at the time of his dismissal. (Doc. 47 at 27-28). Henry cites *Mock v. Bell Helicopter Textron, Inc.*, 196 F. App'x 773 (11th Cir. 2006), in support of this argument. (Doc. 47 at 27). In that case, the Eleventh Circuit held that a triable issue of fact existed as to whether an employer's proffered reason for terminating an employee was pretext where the employee insisted the employer give him its reason for terminating him at the time of termination and the employer refused to do so, only articulating a reason (unacceptable performance) in a later letter. *Mock*, 196 F. App'x at 774. By contrast, Henry testified he did not ask why he was being terminated. (Doc. 44-1 at 16). *See Kohser v. Protective Life Corp.*, 2015 WL 1395911, at *7-8 (N.D. Ala. Mar. 25, 2015) (distinguishing *Mock* where evidence failed to show employee asked any questions regarding her demotion or that employer refused to provide her with any answers about her work-related deficiencies), *aff'd*, 649 F. App'x 774 (11th Cir. 2016). That Wells did not tell Wilkinson he terminated Henry because of performance issues (*see* Doc. 44-10 at 28) does not call the defendants' proffered reasons for Henry's termination into question given Wells had no conversation with Wilkinson at all about why Henry was no longer working for Alabama ReBath (*id.* at 20).

Because Henry has failed to raise a genuine issue of material fact regarding whether the defendants' legitimate, non-retaliatory reasons for terminating him were pretext, the defendants are entitled to summary judgment on Henry's FLSA retaliation claim. *See Johnson*, 778 F. Supp. 2d at 1277.

## V. Conclusion
For the foregoing reasons, the defendants' second motion for summary judgment (Doc. 43) is **DENIED** as to Henry's

claims for unpaid wages and overtime compensation related to "load/unload time" and travel time incurred prior to September 1, 2015. The motion is **GRANTED** as to Henry's FLSA retaliation claims, and those claims are **DISMISSED WITH PREJUDICE**.

**DONE** this 9th day of January, 2019.

**All Citations**

Slip Copy, 2019 WL 142305, 2019 Wage & Hour Cas.2d (BNA) 7492

Footnotes

1    The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).

2    The following facts are undisputed, unless otherwise noted. They are viewed in the light most favorable to Henry, as the non-movant, with Henry given the benefit of all reasonable inferences.

3    The parties dispute when Henry's employment with Alabama ReBath commenced. (Doc. 46-1 at 1; Doc. 53-1 at 1).

4    Henry claims he also picked up trash that had been dumped outside. (Doc. 44-1 at 7-8; Doc. 46-1 at 1). Wells denies Henry was required to clean up trash (Doc. 44-3 at 52), and the defendants contend that even if Henry performed such work, the time it required was *de minimis* (Doc. 51 at 24).

5    Henry disputes that Alabama ReBath always paid this fixed amount of load/unload time. (Doc. 47 at 7).

6    The defendants dispute the precise nature of Henry's complaints and characterize them as arising from Henry's misunderstanding of the Alabama ReBath pay system. (Doc. 51 at 28).

7    The defendants dispute this testimony. (Doc. 52 at 5).

8    Henry mischaracterizes Wilkinson's testimony on this point. While Henry claims Wilkinson testified he did not recall Wells having frustrations with Henry's communication (Doc. 47 at 25), Wilkinson testified as follows:

    Q. Do you recall specifically what issues Andrew had about the communication?

    A. I could only guess.

    (Doc. 44-10 at 16).

9    In response, Henry claims there are missing time sheets and that his pay sheets were altered to remove load/unload time and travel time from the Alabama ReBath office to the job site, as a result of which he can meet a reduced burden of proving his claims for this time through deposition and affidavit testimony. (Doc. 47 at 13-15). It is not necessary to address the substance of Henry's response or the defendants' reply thereto (Doc. 52 at 6-9) because, as discussed below, the defendants have not demonstrated Henry's compensation for load/unload time and travel time to the job site complied with the FLSA's minimum wage and overtime requirements. *See Fitzpatrick*, 2 F.3d at 1116 ("If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made.").

10   The Department of Labor's regulations implementing the FLSA are accorded *Chevron* deference. *Falken v. Glynn County, Georgia*, 197 F.3d 1341, 1346 (11th Cir. 1999).

11   For example:

    Johnson works 40 hours a week at the plant and is paid $7 an hour, or $280. In the same workweek he earns $60 for 10 hours of piecework done at home. His hourly rate of pay is $6.80 [ ($280 + $60) ÷ 50]. As overtime he gets an extra half-time for the 10 hours he worked over 40, or $34 [10 × $3.40]. His total wage for the week is $374 [$280 + $60 + $34]. 1 GUIDE TO EMPLOYMENT LAW AND REGULATION § 13:32.

12   The defendants address this aspect of Henry's FLSA retaliation claim in their amended brief in support of their second motion for summary judgment. (Doc. 51 at 26 n.3). Henry, who did not oppose the filing of the amended brief to address the same (Doc. 49), was given an opportunity to respond to the defendants' position (Doc. 50) but did not do so.

End of Document                                        © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Blue v. Dunn Const. Co., Inc., 453 Fed.Appx. 881 (2011)

Case 3:17-cv-02233-JRW Document 24 Filed 11/12/19 Page 28 of 36

113 Fair Empl.Prac.Cas. (BNA) 1663

453 Fed.Appx. 881
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See
also Eleventh Circuit Rules 36-2, 36-3. (Find
CTA11 Rule 36-2 and Find CTA11 Rule 36-3)
United States Court of Appeals,
Eleventh Circuit.

Timothy BLUE, Plaintiff–Appellant,
v.
DUNN CONSTRUCTION COMPANY,
INC., Defendant–Appellee.

No. 10–14345
|
Non–Argument Calendar.
|
Nov. 23, 2011.

## Synopsis

**Background:** Black construction company employee filed
discrimination and retaliation claims under Title VII and
§ 1981 against his employer. The United States District
Court for the Northern District of Alabama entered summary
judgment for employer. Employee appealed as to two
discrimination claims.

**Holdings:** The Court of Appeals held that:

[1] assuming that delayed promotion was adverse
employment action and employee established prima facie
case of discrimination, employee did not rebut employer's
nondiscriminatory reason for the delay, and

[2] assuming that employee established prima facie case
of race discrimination in connection with his demotion,
employer's stated reasons for demotion were legitimate,
nondiscriminatory, and nonpretextual.

Affirmed.

West Headnotes (2)

[1]    **Civil Rights**
        ⟜ Promotion, demotion, and transfer
        **Civil Rights**
        ⟜ Motive or intent; pretext

        Assuming, for purposes of argument, that
        construction company's delayed promotion of
        black acting foreman to permanent foreman was
        adverse employment action that would support
        prima facie case of discrimination under Title
        VII, employer's proffered reasons for delay were
        legitimate and nondiscriminatory and were not
        shown to be pretextual; plaintiff's performance
        evaluation reflected poor performance in three of
        five major responsibility categories and showed
        failure to score "Good" or "Excellent" in any of
        ten overall categories, two white acting foremen
        who were promoted more quickly both scored
        higher on their performance evaluations, and
        plaintiff had repeated difficulty in managing his
        crew, leading his supervisors to keep him as
        acting foreman in hopes of improvement. 42
        U.S.C.A. § 1981; Civil Rights Act of 1964, §
        703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

        14 Cases that cite this headnote

[2]    **Civil Rights**
        ⟜ Promotion, demotion, and transfer
        **Civil Rights**
        ⟜ Motive or intent; pretext

        Assuming, for purposes of argument, that black
        construction company employee established
        prima facie case of race discrimination in
        connection with his demotion from permanent
        foreman to regular asphalt worker, employer's
        stated reasons for demotion, poor performance
        and employee's failure to control his crew, were
        legitimate and nondiscriminatory and were not
        shown to be pretextual. 42 U.S.C.A. § 1981;
        Civil Rights Act of 1964, § 703(a)(1), 42
        U.S.C.A. § 2000e–2(a)(1).

        17 Cases that cite this headnote

Blue v. Dunn Const. Co., Inc., 453 Fed.Appx. 881 (2011)
113 Fair Empl.Prac.Cas. (BNA) 1663

Case 3:17-cv-02233-JRW   Document 24   Filed 11/12/19   Page 29 of 36

**Attorneys and Law Firms**

**\*882** Larry R. Mann, Law Office of Larry Mann, Cynthia Forman Wilkinson, Wilkinson Law Firm, PC, Birmingham, AL, for Plaintiff–Appellant.

Timothy Alan Palmer, James A. Patton, Jr., Ogletree, Deakins, Nash, Smoak & Stewart, PC, Birmingham, AL, for Defendant–Appellee.

Appeal from the United States District Court for the Northern District of Alabama. D.C. Docket No. 2:09–cv–00864–WMA.

Before TJOFLAT, CARNES and ANDERSON, Circuit Judges.

**Opinion**

PER CURIAM:

 **\*\*1** Timothy Blue appeals following entry of summary judgment in favor of the defendant, Dunn Construction Company, Inc. ("Dunn"), on his employment discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a) and –3(a), and under 42 U.S.C. § 1981.[1] He argues that the district **\*883** court erred by finding that his delayed promotion did not constitute an adverse employment action and that he failed to demonstrate Dunn's proffered non-discriminatory reason for delaying his promotion was pretextual. He also argues that the district court erred by finding that he failed to show that the reason Dunn gave for subsequently demoting him was pretextual. Upon review of the record and consideration of the parties' briefs, we affirm. We address each contention in turn.

## I.

"This court reviews a district court's grant of summary judgment de novo, applying the same legal standards used by the district court." *Galvez v. Bruce,* 552 F.3d 1238, 1241 (11th Cir.2008). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Swisher Int'l., Inc. v. Schafer,* 550 F.3d 1046, 1050 (11th Cir.2008). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for

that party." *Brooks v. Cnty. Comm'n,* 446 F.3d 1160, 1162 (11th Cir.2006).

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a). Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Claims of race discrimination are cognizable under both Title VII and § 1981, and they "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998). Accordingly, we address Blue's Title VII claim with the understanding that the same analysis applies to his § 1981 claims.[2]

A plaintiff may establish a Title VII claim through the introduction of direct evidence of discrimination or circumstantial evidence that creates an inference of discrimination. *Hinson v. Clinch Cnty., Ga. Bd. of Educ.,* 231 F.3d 821, 827 (11th Cir.2000).[3] In an employment discrimination case such as this one, where the plaintiff relies on circumstantial evidence, we apply the *McDonnell–Douglas*[4] burden-shifting framework. *Crawford v. Carroll,* 529 F.3d 961, 975–76 (11th Cir.2008). Under this analysis, the plaintiff can establish a prima facie case of disparate treatment by showing that: (1) he is a member of a protected class, (2) he was subject to an adverse employment action, (3) his employer treated similarly situated employees who were not members of his protected class more favorably, and (4) he was qualified to do the job. *Burke–Fowler v. Orange Cnty.,* 447 F.3d 1319, 1323 (11th Cir.2006). If the plaintiff satisfies the four **\*884** elements of a prima facie case of disparate treatment, and the employer proffers a legitimate, non-discriminatory reason for its employment action, the plaintiff must then show that the reason "is a pretext for unlawful discrimination." *Id.*

 **\*\*2** We have determined that an "adverse employment action" includes "termination, failure to hire, or demotion." *Crawford,* 529 F.3d at 970. An employer's conduct falling short of those actions "must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." *Id.* (quotations and alterations omitted). With regard to the level of substantiality required, the plaintiff must

Blue v. Dunn Constr. Co., Inc., 453 Fed.Appx. 881 (2019)

Case 3:17-cv-02233-JPW Document 24 Filed 11/12/19 Page 30 of 36

113 Fair Empl.Prac.Cas. (BNA) 1663

demonstrate that he "suffered a *serious and material* change in the terms, conditions, or privileges of employment." *Id.* at 970–71 (quotation omitted) (emphasis in original).

It is uncontested that Dunn's practice was to place an employee who was being considered for a promotion in an "acting foreman" role for an indeterminate trial period, during which the employee would be evaluated for suitability. An acting foreman is not a salaried employee but is assured of forty hours' worth of wages regardless of weather conditions, a benefit not given to regular workers. Acting foremen are also entitled to overtime wages, which not even permanent foremen are awarded. Blue remained as an acting foreman for fifteen months and, due to overtime, earned an annual wage higher than that of a permanent foreman. He claims that he was subjected to an adverse employment action because Dunn unreasonably delayed his promotion to permanent foreman on account of his race. In support, Blue presented evidence that two white acting foremen were promoted sooner than he was, one after serving in the acting role for nine months and the other, by Blue's accounting, for less than a year.

This circuit has not yet determined whether a delayed promotion can satisfy the adverse employment action prong. *See Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir.2001). Dunn did not have a company policy about the length of the evaluation period, meaning that Blue could not show unreasonable delay in promoting him, based on a deviation from company policy. The length of the trial period depends on the employee's performance as acting foreman, and Blue was an acting foreman for only a few months longer than the two white acting foremen. Thus, like the *Pennington* court, we have "considerable doubt about whether [Blue] can satisfy ... the adverse employment action prong." *Id.*

[1]    Even assuming *arguendo* that he has established a prima facie case, he did not rebut Dunn's non-discriminatory reason for the delay. A plaintiff will withstand summary judgment by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir.2005). "[A] reason cannot ... be a 'pretext *for discrimination* ' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (emphases in original).

**\*3**  As noted by the district court, non-discriminatory reasons supporting Dunn's decisions to delay the promotion are: (1) Blue's 2006 performance evaluation, which reflected poor performance in three-out-of-five major responsibility categories and **\*885** showed that he failed to score "Good" or "Excellent" in any of ten overall categories; (2) the fact that the two white acting foremen who were promoted more quickly both scored higher than Blue on their performance evaluations; and (3) Blue's repeated difficulty in managing his crew, leading his supervisors to keep him as an acting foreman in the hopes of improvement. If anything, Dunn's decisions to delay promotion seem focused on ensuring that Blue be given an adequate chance to improve his performance and avoid being demoted, rather than seeking to indefinitely prevent a further promotion on account of his race. Blue failed to rebut these non-discriminatory reasons for delaying his promotion. The district court properly granted summary judgment on this claim.

## II.

Next, Blue contends that Dunn subsequently promoted him to permanent foreman, only to demote him back to a regular asphalt worker on account of his race. As discussed above, a plaintiff may establish a prima facie case of discriminatory demotion by showing that (1) he belongs to a protected class, (2) he was subject to an adverse employment action, (3) the employer treated similarly situated employees not of the protected class more favorably, and (4) he was qualified for the job. *Burke-Fowler.* 447 F.3d at 1323. If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for demotion. *Id.* If the employer identifies legitimate reasons, the burden shifts back to the plaintiff to establish that the employer's articulated reason is a mere pretext for discrimination. *Id.* The plaintiff "must meet [the proffered reason] head on and rebut it." *Chapman v. AI Transp..* 229 F.3d 1012, 1030 (11th Cir.2000) (en banc).

If a plaintiff attempts to show pretext by comparing his own treatment to the employer's treatment of similarly situated employees outside of his class, his comparators must be "similarly situated in all relevant aspects." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). Employees are "similarly situated" if they are involved in the same or similar conduct and are disciplined in different ways. *Rioux v. City of Atlanta,* 520 F.3d 1269, 1280 (11th Cir.2008) (quotation

Blue v. Dunn Const. Co., Inc., 453 Fed.Appx. 881 (2011)

Case 3:17-cv-02233-JRW Document 24 Filed 11/12/19 Page 31 of 36

113 Fair Empl.Prac.Cas. (BNA) 1663

omitted). We have held that a "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir.2004).

[2] Assuming *arguendo* that the district court properly concluded that Blue established a prima facie case of discrimination, Blue still fails to present evidence that could lead a reasonable factfinder to conclude that Dunn's stated reasons for his demotion—poor performance and failure to control his crew—were pretext for race discrimination. Specifically, Blue did not show that Dunn's proffered reasons were false. *See Hicks,* 509 U.S. at 515, 113 S.Ct. at 2752. The person who demoted Blue was the same one who had previously promoted him. Also, the evaluation of Blue's 2007 performance contained negative remarks about the number of call-backs on his projects, his inability to focus on quality, the low amount of work his crew accomplished in a typical day, his inability to supervise his crew, and the crew taking advantage of his friendly relations with them. Total ratings of less than "acceptable performance" in three of the five major job responsibilities reflected little improvement from 2006. The only other foreman with scores as low as Blue's was Tim Fallin, who is white and was demoted in 2007, then fired in 2008. The evaluation, which Blue signed after discussing it with his supervisors, noted that **886 Blue had "not significantly improved in 2007. [Dunn] will put someone helping [Blue] with his crew and monitor whether this helps. If it does not, then we have no choice but to make a change and place [Blue] back as an operator." Blue does not dispute that, in December 2007, General Superintendent Billy Joe Nichols and Blue's immediate supervisor, Wayne Snell, who is African American, verbally warned him that he faced demotion if he did not take better charge of his crew. Given all this evidence, Blue failed to show

that Dunn's proffered reason for demotion contained "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions ... that a reasonable factfinder could find them unworthy of credence." *Jackson,* 405 F.3d at 1289.[5]

**4 Furthermore, Blue failed to show pretext by comparing his own treatment to Dunn's treatment of similarly situated white employees. *See Holifield,* 115 F.3d at 1562. His performance scores were worse than his comparators'. And while Blue's comparators had criminal records, had failed drug tests, or had failed to wear their uniforms, none of them had been evaluated as failing to control their crew or producing poor quality work. The "quantity and quality of the comparator's misconduct [must] be nearly identical [to the plaintiff's] to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999). Here, Blue's comparators were not charged with the same kind of misconduct that he was.

We do not analyze "whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999). Since there was no unlawful animus, the district court properly granted summary judgment on this claim.

**AFFIRMED.**[6]

**All Citations**

453 Fed.Appx. 881, 2011 WL 5903535, 113 Fair Empl.Prac.Cas. (BNA) 1663

---

Footnotes

1   Blue offers no argument with respect to his retaliation claim and his discrimination claim based on the denial of assistance to perform his duties. Those claims are thereby waived, and we decline to address them. *See Mize v. Hall,* 532 F.3d 1184, 1189 n. 3 (11th Cir.2008).

2   Even though Blue's delayed promotion claim was time-barred under Title VII because he filed his EEOC charge more than 180 days after he was promoted, it was nevertheless cognizable under § 1981 because he filed his charge within four years of his promotion. *See Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 448 (11th Cir.1993).

3   Because Blue does not challenge the district court's finding that no direct evidence of race discrimination existed, the only dispute is whether Blue presented sufficient circumstantial evidence to avoid summary judgment on his delayed promotion claim under § 1981. *See Pennington v. City of Huntsville,* 261 F.3d 1262, 1265 (11th Cir.2001).

4   *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

5   Blue also argues that the real reason Dunn demoted him was because a member of Blue's crew damaged a building with paving equipment. *See Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1194 (11th Cir.2004) (holding that

Blue v. Dunn Const. Co., Inc., 453 Fed.Appx. 881 (2011)

Case 3:17-cv-02233-JPW    Document 24    Filed 11/12/19    Page 32 of 36
113 Fair Empl.Prac.Cas. (BNA) 1663

evidence of pretext can include where an employer gives "shifting" reasons for an employment decision). As the district court noted, such an accident by itself "would not normally be cause for the demotion of a Foreman."

To support this contention, Blue offered the testimony of Snell and Matt Albright. Snell did discuss the job-site accident at the same time he discussed Blue's demotion, but when Snell was directly asked why Blue was demoted, Snell said, "Because I don't think he was—he didn't take charge of his crew was the main thing. As far as running his crew himself. Making all the shot calls and driving and pushing. He wasn't—he wasn't doing that."

One of Blue's crew members had told Albright that Blue was demoted because of the accident. Even if the district court could consider this hearsay, *see Pritchard v. S. Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir.1996), it does not help Blue's case because it merely establishes what one of Blue's own crew members thought about Blue's demotion. It does not provide evidence of why Blue's supervisors demoted him. *See Steger v. General Electric Co.,* 318 F.3d 1066, 1079 (11th Cir.2003) (holding that "statements made by nondecisionmakers" do not demonstrate discriminatory intent).

6    Appellant's motion to file reply brief out of time is GRANTED.

---

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

**1. Urbani v. Wellesley College**

United States District Court, D. Massachusetts.   |   January 12, 2016   |   Not Reported in Fed. Supp.   |   2016 WL 6571247

Plaintiffs, eight past and present officers of the Wellesley College Police Department, bring this action against their employer, Defendant Wellesley College ("Wellesley"), for alleged violations of the Fair Labor Standards Act ("FLSA"). Plaintiffs' one-count Complaint alleges that Wellesley willfully violated the FLSA by...

**2. Barnello v. AGC Chemicals Americas, Inc.**

United States District Court, D. New Jersey.   |   January 29, 2009   |   Not Reported in F.Supp.2d   |   2009 WL 234142

LABOR AND EMPLOYMENT - Hours and Wages. Employee's sufficiently plead a cause of action under the Fair Labor Standards Act (FLSA) against employer.

**3. Barrentine v. Arkansas-Best Freight System, Inc.**

Supreme Court of the United States   |   April 06, 1981   |   450 U.S. 728   |   101 S.Ct. 1437

Employees sued employer asserting a minimum wage claim under the Fair Labor Standards Act and alleging breach of the union's duty of fair representation. The United States District Court for the Eastern District of Arkansas rendered judgment for the employer. The United States Court of Appeals for the Eighth Circuit, 615 F.2d 1194, affirmed, and...

**4. Arnold v. DirecTV, LLC**

United States District Court, E.D. Missouri, Eastern Division.   |   March 31, 2017   |   Not Reported in Fed. Supp.   |   2017 WL 1196428

This matter is before the Court on Defendants' Motions for Summary Judgment as to the Claims of the DirecTV Home Services Plaintiffs (Doc. No. 315), Plaintiffs Jamie Arnold and Clinton Feger (Doc. No. 322), the DirectSat Plaintiffs (Doc. No. 329), the MasTec Plaintiffs (Doc. No. 336), and the Multiband Plaintiffs (Doc. No. 355). The motions...

**5. Shepard v. City of Waterloo**

United States District Court, N.D. Iowa, Eastern Division.   |   December 16, 2015   |   Not Reported in F.Supp.3d   |   2015 WL 9165915

I. INTRODUCTION.——— II. RELEVANT PROCEDURAL HISTORY.——— III. SUBJECT MATTER JURISDICTION.——— IV. SUMMARY JUDGMENT STANDARD.——— V. RELEVANT FACTUAL BACKGROUND.——— A. Parties.——— B. The Collective Bargaining Agreement.——— C. The Letter Agreement.——— D. The Payroll Change.——— E. The Dispute.——— VI. ANALYSIS.——— A. The "Regular Rate" Under...

**6. Jones v. Does 1-10**
United States Court of Appeals, Third Circuit.    May 18, 2017    857 F.3d 508    2017 WL 2174526

LABOR AND EMPLOYMENT - Hours and Wages. Employees did not have to seek arbitration pursuant to CBA's grievance provisions before proceeding with FLSA overtime claim.

**7. Bell v. Southeastern Pennsylvania Transp. Authority**
United States Court of Appeals, Third Circuit.    August 19, 2013    733 F.3d 490    2013 WL 4405690

LABOR AND EMPLOYMENT - Collective Bargaining. Bus drivers did not have to seek arbitration pursuant to CBAs' grievance provisions before proceeding with their FLSA claim.

**8. Elswick v. Daniels Electric Inc.**
United States District Court, S.D. West Virginia.    April 15, 2011    787 F.Supp.2d 443    2011 WL 1464875

LABOR AND EMPLOYMENT - Hours and Wages. As a matter of first impression, FLSA claim was subject to the procedural requirements of the LMRA.

**9. Oddo v. Bimbo Bakeries USA, Inc.**
United States District Court, D. New Jersey.    May 17, 2017    Not Reported in Fed. Supp.    2017 WL 2172440

The plaintiffs, Christopher Oddo, Phillip Brucato, and Michael Lennon, filed an individual, collective, and class action civil complaint, seeking, on behalf of themselves and other similarly situated, lost wages, damages, and other relief for the alleged failure of defendant Bimbo Bakeries USA, Inc. (hereinafter "BBUSA") to pay overtime...

**10. Johnson v. Langer Transport Corp.**
United States District Court, D. New Jersey.    May 13, 2015    Not Reported in F.Supp.3d    2015 WL 2254671

This matter comes before the Court by way of Defendant Langer Transport Company ("Defendant")' motion to dismiss Plaintiff Charles A. Johnson ("Plaintiff")'s Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 6). The Court has considered the parties' submissions in support of...

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SCOTT P. CLEWS,                  : Case Number:  3:17-cv-02233
JOSEPH S. POTHERING and          :
DEBRA M. DETWEILER,              : Jury Trial Demanded
          Plaintiffs      :
                      : Electronically Filed
      vs.                    :
                      :
COUNTY OF SCHUYLKILL,            :
          Defendant        :

## CERTIFICATE OF SERVICE

I, Edward M. Brennan, Esquire, do hereby certify that I served a true and correct copy of the foregoing Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment against Defendant, County of Schuylkill, by the Court's e-filing system, and by depositing the same in the United States Mail, postage prepaid, in the Post Office at Pottsville, Pennsylvania, addressed to the following:

Christopher L. Scott, Esquire
Thomas, Thomas & Hafer, LLP
P.O. Box 999
Harrisburg, PA  17108

Date: 11/12/2019                    By:  /s/Edward M. Brennan
                                  Edward M. Brennan, Esquire
                                  306 Mahantongo Street
                                  Pottsville, PA  17901
                                  (570) 628-2461
                                  (570) 628-4498 – fax
                                  emb@attybrennan.com
                                  Attorney I.D. No. PA38770
                                  Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT P. CLEWS,                : Case Number:  3:17-cv-02233
JOSEPH S. POTHERING and        :
DEBRA M. DETWEILER,        : Jury Trial Demanded
           Plaintiffs     :
                            : Electronically Filed
     vs.                  :
                            :
COUNTY OF SCHUYLKILL,       :
           Defendant     :

### CERTIFICATION PURSUANT TO L.R. 7.8(b)(2)

Edward M. Brennan, Esquire, hereby certifies that Plaintiffs' Memorandum of Law in

Support of Motion for Partial Summary Judgment complies with the word count limit of L.R.

7.8(b)(2).  Although the Memorandum is 17 pages, the word count is 4,985, based on the word

processing system used to prepare the Memorandum, Microsoft Word 2013.

Date: November 12, 2019            /s/ Edward M. Brennan           
                                     Edward M. Brennan, Esquire
                                     306 Mahantongo Street
                                     Pottsville, PA  17901
                                     (570) 628-2461
                                     (570) 628-4498 – fax
                                     emb@attybrennan.com
                                     Attorney I.D. No. PA38770
                                     Attorney for Plaintiffs