**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCOTT CLEWS, *et al.*, | : | Civil No. 3:17-CV-02233 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF SCHUYLKILL, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Defendant's motion for summary judgment, Doc. 20, and

Plaintiffs' motion for partial summary judgment, Doc. 23.  In this litigation,

Plaintiffs allege that Defendant committed several violations of the Fair Labor

Standards Act ("FLSA") 29 U.S.C. § 201, *et seq.*  Defendant, however, has

demonstrated as a matter of law that Plaintiffs are exempt from FLSA coverage,

because they were members of an elected official's personal staff.  For the reasons

that follow, the court grants Defendant's motion for summary judgment, Doc. 20,

and denies Plaintiffs' motion for partial summary judgment, Doc. 23.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs, Scott Clews, Joseph S. Pothering, and Debra M. Detweiler, filed

suit against Defendant, County of Schuylkill (the "County"), alleging various

violations of the FLSA.  (*See* Doc. 7.)  Plaintiff Clews is a former deputy coroner

with the County, who was employed for 8 years between 2008 and 2016.  (Doc.

21-1, Clews Deposition 13:10–13, 23:15.[1])  Concurrent with his employment as a deputy coroner, Plaintiff Clews served as a 911 operator for the County, where he remains employed to date.  (Clews Dep. 9:7–14.)  Plaintiff Pothering is also a former deputy coroner with the County, who was employed for 11 years between 2008 and 2019.  (Doc. 21-2, Pothering Deposition 6:6–18.)  Concurrent with his employment as a deputy coroner, Plaintiff Pothering served as a 911 operator for the County and retired from this position in 2018.  (Pothering Dep. 7:19–8:5.)  Plaintiff Detweiler is a current deputy coroner.  (Doc. 21-3, Detweiler Deposition 7:1–7.)  She was hired for this position in 2014.  (Detweiler Dep. 8:11–16.)  Concurrent with her employment as a deputy coroner, Plaintiff Detweiler also serves as a certified field appraiser in the tax assessor's office.  (Detweiler Dep. 7:4–6, 8:6–8.)  Defendant is a county government, which is organized and exists under the laws of the Commonwealth of Pennsylvania.  (Doc. 7, at ¶ 4.)  The elected coroner of the County is Dr. David Moylan.  (Doc. 21-4, Dr. Moylan Deposition, 5:17–19.)  He has served as the elected coroner since taking office in January 2012.  (Moylan Dep. 5:23–25.)

In Schuylkill County, the coroner is a "row officer" and has the discretion to hire and fire employees that work in his office.[2]  (Martina Chwastiak Dep. Doc.

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.
[2] A "row officer" is an elected official that is independent of the county government's board of commissioners.  *See* 16 Pa. Stat. Ann. § 401(4).

26-2, 4:25–5:7.)  Plaintiffs Pothering and Clews were both hired by the former

coroner, Joseph Lipsett, and Plaintiff Detweiler was hired by the current coroner,

Dr. Moylan.  (Pothering Dep., 10:22–23, 11:4–6; Clews Dep., 13:10–17; Detweiler

Dep., 9:1–22.)  The deputy coroner hiring process described by Plaintiffs charts a

similar course, *i.e.*, each Plaintiff had a meeting with the acting county coroner,

who proceeded to extend an offer to work as one of his deputies.  (Detweiler Dep.

9:9–23; Clews Dep. 16:1–8.)  For example, Plaintiff Clews stated that Lipsett "sat

down and talked to" those who were applying at the time.  (Clews Dep. 16:1–8.)

Plaintiff Detweiler also explained that she had a preliminary interview with Dr.

Moylan, who arranged for her to job-shadow Plaintiff Pothering.  (Detweiler Dep.

9:9–12.)  After shadowing Plaintiff Pothering, Dr. Moylan followed up with her to

see if she was interested in serving as a deputy coroner.  (Detweiler Dep. 9:13–19.)

Each Plaintiff explained that he/she was supervised by the acting county

coroner and his chief deputy.  (Clews Dep. 16:9–24, 17:4–10; Detweiler

Dep.11:25-12:2; Pothering Dep., 10:20–11:3, 11:24–12:1.)  Both Plaintiff

Pothering and Plaintiff Detweiler testified that they worked closely with Dr.

Moylan.  (Pothering Dep. 14:11–18; Detweiler 12:17–19.)  To illustrate, Plaintiff

Pothering interreacted with Dr. Moylan "on a daily basis." (Pothering Dep. 14:17–

18.)  Plaintiff Pothering further stated that when the state police called Dr. Moylan

for clarification about one of Plaintiff Pothering's cases, Dr. Moylan would review Plaintiff Pothering's materials and work with him to correct any mistakes. (Pothering Dep. 11:14–23.)

As deputy coroners, Plaintiffs' job responsibilities involved investigating and determining the cause and manner of death in various emergency scenarios. (Clews Dep. 19:6–8; Detweiler Dep. 12:7–13; Pothering Dep. 14:1–5.)  To accomplish this task, they were called by either Dr. Moylan or his chief deputy coroner to inform them of the location of a scene where someone had died.  (Clews Dep. 20:5–12; Detweiler Dep. 12:7–13; Pothering 12:15–20.)  At the scene, they represented the coroner's office to the public.  (Clews Dep. 23:7–10; Pothering Dep. 15:3–5; Detweiler 13:17–19.)  When responding to calls, Plaintiffs were required to wear professional looking attire, such as khaki pants, polo shirts, and a "fluorescent or reflective vest."  (Clews Dep. 22:22–23:3; Pothering Dep. 14:22–24; Detweiler 13:9–12.)  They also carried identification badges that identified them as employees of the coroner's office.  (Clews Dep. 23:4–6; Pothering Dep. 15:2.)  Dr. Moylan "rarely" accompanied them on location. (Clews Dep. 21:8–10.) They were Dr. Moylan's "eyes on the scene" or his "first line" observers. (Pothering Dep. 14:6–10.)  Once arriving at the scene, they would begin their investigation by talking to anyone there, including emergency medical staff and the police, to determine the cause and manner of death.  (Clews Dep. 21:11–22:1;

4

Detweiler 12:7–13.)  Finally, they would call Dr. Moylan or his chief deputy, whomever had initially called them to the scene, and report their findings.  (Clews Dep. 22:5–21; Detweiler Dep. 12:12–16.)

At the end of 2015, Dr. Moylan was made aware of a policy that County employees could not work more than one job for the County and generate more than forty (40) hours of work.  (Moylan Dep. 42:11–17.)  Dr. Moylan explained that he terminated three deputy coroners, including Plaintiffs Clews and Pothering, "because of that 40-hour rule."  (Moylan Dep. 43:20–24.)  At the Board of Commissioner's Meeting on June 1, 2016 (the "June meeting"), the termination of these deputy coroners was discussed in connection with this "40 hour rule." (Moylan Dep. 43:2–24.)  The former Human Resources Director for the County, Martina Chwastiak, requested approval of the three deputy coroners' terminations, and each of the commissioners affirmed.  (Doc. 26-4, at 8.)  The minutes from the June meeting further indicate:

> *MARTINA EXPLAINED THAT THE THREE EMPLOYEES WHO WORKED FOR THE CORONER'S OFFICE WERE TERMINATED DUE TO THE RECENT OVERTIME ISSUE . . . . SINCE THESE EMPLOYEES WERE ALREADY AT 40 HOURS, WE HAD TO TERMINATE THEM FROM THOSE JOBS IN THE CORONER'S OFFICE.*
> *COMMISSIONER HALCOVAGE INFORMED EVERYONE THAT THIS WAS BECAUSE OF THE FEDERAL LAW.*
> *MARTINA SAID YES.*

(*Id.* at 9) (emphasis in original.)

5

In the aftermath of this decision, Plaintiff Clews spoke with Dr. Moylan who explained "because of the federal overtime laws, [he] had to be terminated." (Clews Dep. 23:23–25.)  Plaintiff Pothering, on the other hand, explained that he was not separated from the coroner's office in June 2016, as he "continued to stay on." (Pothering Dep. 38:24–39:2.)  Though he was separated from the coroner's office for a period of time in 2017, he was not completely terminated from his work as a deputy coroner until May 2019.  (Pothering Dep. 40:1–23, 41:2–8.)  At this time, he was terminated from his position for "political" reasons, as it was an election year.  (Pothering Dep. 41:13–18.)  He favored Plaintiff Detweiler, who was running for county coroner, and this "didn't seem to go over well with Dr. Moylan," who was also a contender for this position.  (Pothering Dep. 41:13–22.)  At some point in 2016 or 2017, Plaintiff Detweiler was also "asked to step down, but there was never actual separation" between her and the coroner's office. (Detweiler Dep. 32:15–23.)  Plaintiff Detweiler and Dr. Moylan were in discussions to create a full-time position for her in the coroner's office, which derailed and culminated in an argument between them.  (Detweiler Dep. 33:1– 34:6.)  As a result of this disagreement, Dr. Moylan asked Plaintiff Detweiler to "stand down." (Detweiler Dep. 34:4–12.)  Plaintiff Detweiler, however, continues to work as a deputy coroner and was not asked to work fewer hours.  (Detweiler Dep. 7:2–7; 40:20–41:1.)

On November 6, 2017, Plaintiffs commenced this action in the Court of Common Pleas of Schuylkill County.  (*See* Doc. 2.)  Defendant filed a notice of removal on December 5, 2017.  (Doc. 1.)  Plaintiffs filed an amended complaint, alleging that Defendant violated the FLSA's overtime wage provision and retaliatory discharge provision.  (Doc. 7.)

On November 12, 2019, Defendant filed a motion for summary judgment. (Docs. 20, 21.)  Defendant argues that it is entitled to judgment as a matter of law because Plaintiffs fall under the personal staff exemption to the FLSA's definition of an "employee" and thus are not covered by the FLSA's protections.  (Doc. 22, at 5.)  As exempted individuals, Defendant avers that Plaintiffs' claims under the FLSA's overtime wage and retaliation provisions fail.  (Doc. 22, at 16.)  Defendant further argues that, even if the court concludes that Plaintiffs are covered employees under the FLSA, Defendant is still entitled to summary judgment because Plaintiffs have failed to produce any evidence that they are entitled to overtime pay or suffered retaliatory discharges for inquiring about overtime compensation.  (Doc. 22, at 16-22.)  Plaintiffs filed a brief in opposition and an answer to Defendant's statement of facts.  (Docs. 29, 30.)  In response, Defendant filed a reply brief.  (Doc. 34.)

On November 12, 2019, Plaintiffs filed a cross motion for partial summary judgment.  (Doc. 23.)  Plaintiffs argue that they are entitled to summary judgment

on their FLSA overtime wage and retaliatory discharge challenges.  Regarding

their overtime wage claim, Plaintiffs argue that the commissioners admitted that

Plaintiffs were owed overtime wages, Defendant had actual or constructive

knowledge of the overtime hours worked by Plaintiffs, Defendant's conduct in

failing to pay overtime was willful and done in bad faith, and Defendant failed to

maintain accurate or adequate records.  (Doc. 24, at 3-10.)  Plaintiffs also set forth

the rate of pay that should be used to calculate overtime compensation, leaving for

a jury to determine the amount of overtime hours worked by Plaintiffs.  (Doc. 24,

at 11-17.)  Regarding their retaliation claim, Plaintiffs argue that Plaintiffs Clews

and Pothering are entitled to summary judgment because Defendant terminated

them for inquiring about federal overtime rules.  (Doc. 24, at 7-8.)  Defendant

responded to this motion with a brief in opposition and an answer to Plaintiffs'

statement of facts.  (Docs. 32, 33.)  Defendant's motion for summary judgment and

Plaintiffs' motion for partial summary judgment are now ripe for review.

## JURISDICTION

Plaintiffs allege various violations of the FLSA.  (*See* Doc. 7.)  Pursuant to

28 U.S.C. § 1331, this court has jurisdiction over claims that arise under the laws

of the United States.

## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248–49).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings

and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218 (quotation omitted).

Although the parties have filed cross-motions for summary judgment, this legal standard remains the same. *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 401 (3d Cir. 2016). Normally, a court considers each motion independently, *Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 F. App'x 266, 270 (3d Cir. 2006), and the denial of one does not imply the granting of the other. *Bacon v. Avis Budget Grp., Inc.*, No. CV165939MKJBC, 2018 WL 6492923, at *7 (D.N.J. Dec. 7, 2018). But where, as here, "review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F. Supp. 2d 425, 430 (M.D. Pa. 2006) (citing *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998)).

### DISCUSSION

Defendant argues that it is entitled to summary judgment on the overtime pay and retaliation claims on the ground that Plaintiffs are exempted from FLSA coverage because they were "personal staff." Plaintiffs, on the other hand, argue

they are entitled to partial summary judgment, but their motion is predicated on being covered under the FLSA.  The court, therefore, addresses the threshold and outcome determinative question of whether Plaintiffs are exempted from FLSA coverage.

### A.   Defendant Has Not Waived the Affirmative Defense Regarding the Personal Staff Exemption to FLSA Coverage

In their brief in opposition to Defendant's motion for summary judgment, Plaintiffs claim that Defendant failed to adequately raise this argument in its answer, and that "[t]he assertion of an exemption from the mandates of the FLSA is an affirmative defense that is waived if it is not specifically pleaded by a Defendant."  (Doc. 29, at 3.)

An exemption under the FLSA "is a matter of affirmative defense on which the employer has the burden of proof."  *Sander v. Light Action, Inc.*, 525 F. App'x 147, 150 (3d Cir. 2013) (quotation omitted).  Although the Third Circuit has not specifically addressed whether a defendant that fails to set forth a FLSA exemption defense in its answer results in waiver, several courts agree that such a failure generally does not preclude the defendant from asserting the defense.  *See, e.g.*, *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 632 (7th Cir. 2010); *Bergquist v. Fid. Info. Servs., Inc.*, 197 F. App'x 813, 814 (11th Cir. 2006); *Antiskay v. Contemporary Graphics & Bindery Inc.*, No. CIV. 11-7579 NLH/KMW, 2013 WL 6858950, at *5 (D.N.J. Dec. 26, 2013).

In a different substantive context, the Third Circuit has explained that a finding of waiver of an affirmative defense is appropriate only when "the party raising the defense did not do so at a 'pragmatically sufficient time' and if the opposing party would be prejudiced if the defense were allowed." *In re Frescati Shipping Co., Ltd.*, 886 F.3d 291, 313 (3d Cir. 2018) (quoting *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991)).  "[T]he purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *In re Sterten*, 546 F.3d 278, 285 (3d Cir. 2008) (quotation omitted).  Thus, under normal affirmative defense waiver analysis, a district court must consider whether the defendant's failure to raise a defense deprived the plaintiff of an opportunity to rebut that defense or to alter its litigation strategy. *Id.*

Here, Defendant has not waived the personal staff exemption defense because Plaintiffs were aware of Defendant's intention to raise this defense and had ample opportunity to rebut it.  Defendant stated in its answer that "[P]laintiffs are not entitled to any recovery in this action because they were, and are, exempt from the minimum wage and/or overtime requirements of the FLSA."  (Doc. 8, at 7.)  Defendant proceeded to conduct discovery on the personal staff exemption by questioning each Plaintiff about their exempt status.  *See also Antiskay*, 2013 WL

6858950, at *5 (finding that the plaintiff was aware of the defendant's personal

staff exemption defense because he was deposed about his exempt status).  In its

brief in support of its motion for summary judgment, Defendant specifically

argued the personal staff exemption to the FLSA.  (*See* Doc. 22.)  *See also*

*Schmidt*, 599 F.3d at 632 (finding that a party, who specifically raised an

affirmative defense under the FLSA for the first time at summary judgment, did

not waive it).  And though Plaintiffs argue that Defendant waived the personal staff

exemption defense, they have not alleged that they were prejudiced by Defendant's

failure to explicitly plead this defense in its answer, or that they were caught off

guard by the assertion of this exemption. (*See* Doc. 29.)  Since Plaintiffs had

adequate notice and have not suffered any prejudice, Defendant has not waived the

personal staff exemption defense. The court will proceed to consider the merits of

this defense.

### B.  The Personal Staff Exemption Defense to FLSA Coverage Applies in This Case

Plaintiffs allege that they were covered employees of the County and

Defendant violated their FLSA protections regarding overtime wages and

retaliation.  (*See* Doc. 7.)  Although the FLSA safeguards certain employee rights,

some workers are excluded from its protections.  *See* 29 U.S.C. § 203(e)(2)(C)

(listing individuals who do not fall within the FLSA's definition of an

"employee"); *see also Birch v. Cuyahoga Cty. Prob. Court*, 392 F.3d 151, 161 (6th

Cir. 2004) (highlighting the class of individuals who are exempt from the FLSA's

definition of an "employee" by quoting 29 U.S.C. § 203(e)(2)(C)). Defendant

contends that it is entitled to summary judgment on Plaintiffs' claims that it

violated the FLSA's overtime wage and retaliation provisions because Plaintiffs do

not fall under the FLSA's definition of an "employee." (Doc. 22, at 5.) Instead,

they qualify as the personal staff of an elected official, *i.e.*, the coroner, which

exempts them from the FLSA's overtime wage and retaliation protections. (Doc.

22, at 5.)

Pursuant to 29 U.S.C. § 203(e)(2)(C), an individual employed by a "political

subdivision of a State" who is not covered by the FLSA includes "any individual . .

. who is not subject to the civil service laws of the State, political subdivision, or

agency which employs him [] and [] who . . . is selected by the holder of such an

office to be a member of his personal staff . . . ." Here, it is undisputed that

Plaintiffs "were selected to be [] deputy coroner[s] or staff member[s] by an

elected public official and that they were not subject to civil service laws." (Doc.

29, at 6.) Thus, the only question is whether Plaintiffs were members of the

elected coroner's personal staff.

The FLSA does not define "personal staff," so the court must assess the

circumstances of the employment relationship between Plaintiffs and the coroner.

*See Marburger v. Upper Hanover Twp.*, 225 F. Supp. 2d 503, 510 (E.D. Pa. 2002)

(looking to the nature of the employment relationship between the plaintiff and the elected official to determine if the personal staff exemption applied).  The Third Circuit has not provided a standard for assessing whether an employee qualifies as personal staff under the FLSA specifically.  However, various courts have interpreted the FLSA's personal staff exemption consistently with its Title VII counterpart, and the court is therefore persuaded to apply the leading statement of the law regarding the personal staff exemption under Title VII as set forth by *Teneyuca v. Bexar Cty.*, 767 F.2d 148 (5th Cir. 1985).[3]  *See Birch*, 392 F.3d at 161 (interpreting the FLSA's personal staff exemption consistent with its Title VII counterpart); *Nichols v. Hurley*, 921 F.2d 1101, 1108 (10th Cir. 1990) (same). Moreover, other district courts within the Third Circuit have applied *Teneyuca* in evaluating whether an individual is exempt as personal staff under FLSA and Title VII challenges.  *See, e.g., Gupta v. First Judicial Dist. of Pa.*, 759 F. Supp. 2d 564, 569 (E.D. Pa. 2010) (applying *Teneyuca* to a Title VII challenge); *Conley*, 521 F. Supp. 2d at 453 (same); *Marburger*, 225 F. Supp. 2d at 510 (synthesizing a factor test from *Teneyuca* and other federal cases nationwide under the FLSA, Title VII, and other anti-discrimination legislation to assess whether the plaintiff qualified as personal staff under the FLSA).

---

[3] In addition, both parties address the six-factor analysis of the personal staff exemption set forth in *Teneyuca*.  (Docs. 22 at 10; 29 at 8.)

The court in *Teneyuca* identified six factors, which numerous courts have considered in determining whether a complainant qualifies as personal staff of an elected official.  These factors include: (1) whether the elected official has plenary powers of appointment and removal; (2) whether the person in the position at issue is personally accountable to only that elected official; (3) whether the person in the position at issue represents the elected official in the eyes of the public; (4) whether the elected official exercises a considerable amount of control over the position; (5) the level of the position within the organization's chain of command; and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.  *Teneyuca*, 767 F.2d at 151 (citations omitted). "The focus of these factors is on whether the employee worked in an intimate and sensitive position of trust, close to the elected official."  *Conley*, 521 F. Supp. 2d at 453 (citing *Cromer v. Brown*, 88 F.3d 1315, 1323 (4th Cir.1996)); *see also Curl v. Reavis*, 740 F.2d 1323, 1328 (4th Cir. 1984) ("Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official.").

Upon consideration of the *Teneyuca* factors, as detailed below, and, more generally, whether Plaintiffs served in an intimate position of trust with the elected coroner, the court finds as a matter of law that Plaintiffs are exempt from FLSA coverage because they are members of the coroner's personal staff.

With respect to the first factor, whether the elected official has plenary powers of appointment and removal, Pennsylvania law establishes that the coroner is an elected official who exercises plenary powers of appointment and removal over Plaintiffs' positions as deputy coroners.  16 Pa. Stat. Ann. § 3401(a)(4). Deputy coroners, as appointees to a county office, "shall be subject to removal at the pleasure of the appointing power."  16 Pa. Stat. Ann. § 3450(b).  In addition, as a factual matter, each Plaintiff confirmed that they were interviewed and hired by the acting coroner.  (Pothering Dep., 10:22–23, 11:4–6; Clews Dep., 13:10–17; Detweiler Dep., 9:1–22.)  Plaintiff Pothering also stated that he was terminated from his position for "political" reasons, as it was an election year.  (Pothering Dep. 41:13–18.)  He went on to explain that he favored Plaintiff Detweiler, who was running for county coroner, and this "didn't seem to go over well with Dr. Moylan."  (Pothering Dep. 41:13–22.)

Chwastiak confirmed that the acting coroner has the discretion to hire and fire employees that work in his office.  (Chwastiak Dep. 4:25–5:7.)  Each row officer initiates the hiring and termination processes by completing a "Personal Action Request" ("PAR").  (Chwastiak Dep. 7:3–9; Moylan Dep. 62:20-25.)  Dr. Moylan explained that a PAR is submitted when a row officer initiates the hiring process for a deputy coroner.  (Moylan Dep. 62:20-25.)  Chwastiak explained in further detail how PAR's are used during the termination process, stating that each

request is added to the agenda for the Board of Commissioner's meeting for "final" authorization, "[b]ut [the termination process] has to start . . . with Dr. Moylan or any elected official saying they're going to terminate." (Chwastiak Dep. 7:9–16.)

Plaintiffs do not dispute that the coroner has plenary authority, by statute, to hire and fire deputy coroners at will. (*See* Doc. 29, at 5-11.) However, Plaintiffs argue that factor one weighs in favor of finding that Plaintiffs are not personal staff, because "the [c]oroner does not have the exclusive right to hire as many staff as he wants, or at whatever salary he wants under the County Code" and must confirm his hiring and firing decisions with the commissioners. (Doc. 29, at 8-9.) Viewing these facts in the light most favorable to Plaintiffs, these details do not indicate that factor one militates in favor of finding that Plaintiffs are not personal staff for several reasons. First, very few elected government officials, if any, have unfettered authority to hire an unlimited amount of staff members at any salary of their choosing. *See also Conley*, 521 F. Supp. 2d at 453 (holding that an elected official still had plenary powers of appointment and removal over the plaintiff even though he did not have the authority to hire as many individuals as he wanted or control salary decisions for the plaintiff's position). Moreover, it is notable that Plaintiff Detweiler remained working for Dr. Moylan even after they were unable to reach an agreement regarding a full-time position for her in the coroner's office. (Detweiler Dep. 33:1–34:6; 7:2–7; 40:20–41:1.) *Cf. Conley*, 521 F. Supp. 2d at

453 (noting that a plaintiff who continued to work without pay for an elected official, even after funding for the plaintiff's position was cut by an elected board and the plaintiff was unable to receive compensation, was more akin to a personal staff member than a covered employee).

Second, the commissioners' approval of the coroner's termination decisions appears to be a formality, as evidenced by the fact that at the June meeting, where the termination of Plaintiffs Pothering and Clews was discussed, the Commissioners approved their termination before discussing the circumstances. (Doc. 26-4, at 8–9.)  Additionally, Plaintiff Pothering continued to work on and off for the coroner's office for a couple of years after his "termination" at the June meeting occurred.  (Pothering Dep. 40:1–23, 41:2–8.)  *Cf. Conley*, 521 F. Supp. 2d at 453 (noting that another political body's approval of an elected official's hiring decision was a "formality" because the plaintiff performed his duties for the elected official without the approving body's authorization for more than nine months).  Dr. Moylan's statutory authority, as the acting coroner, to hire and fire deputy coroners at will and his significant role in both processes demonstrates Plaintiffs were more akin to the coroner's personal staff than covered employees under the FLSA.

Regarding the third factor (as the second factor is addressed along with other related factors below), whether the person in the position at issue represents the

elected official in the eyes of the public, there is no question that each Plaintiff, as a deputy coroner, represented the coroner's office in the eyes of the public. Under Pennsylvania law: "The coroner shall appoint a chief deputy and may appoint one or more deputies to act in his place and stead, as he may deem proper and necessary. Such deputy or deputies shall have the same powers as the coroner." 16 Pa. Stat. Ann. § 4231. Each Plaintiff confirmed that they represented the coroner's office to the public. (Clews Dep. 23:7–10; Pothering Dep. 15:3–5; Detweiler 13:17–19.) When responding to calls, Plaintiffs were required to wear professional looking attire, such as khaki pants, polo shirts, and a "fluorescent or reflective vest." (Clews Dep. 22:22–23:3; Pothering Dep. 14:22–24; Detweiler 13:9–12.) They also carried identification badges that identified them as employees of the coroner's office. (Clews Dep. 23:4–6; Pothering Dep. 15:2.) At the scene, they interacted with bystanders, law enforcement, and emergency medical personnel when carrying out their investigation. (Clews Dep. 21:11–22:1; Detweiler Dep. 12:7–13.) Plaintiff Pothering even noted that he sometimes interviewed families "[t]o get the medical background of the decedent." (Pothering Dep. 15:23–25.) Moreover, Dr. Moylan "rarely" accompanied Plaintiffs to each scene. (Clews Dep. 21:8–10.) Plaintiffs' representation of the coroner's office, while performing their duties on location, weighs in favor of finding that Plaintiffs were members of the coroner's personal staff. *See also*

*Marburger*, 225 F. Supp. 2d at 513 (indicating that a plaintiff who had "contacts

with the general citizenry and other Township officials on [an elected body's]

behalf" was more like a personal staff member than a covered employee).

Regarding the remaining factors, there are no disputed facts and the analysis

is straightforward.  Each Plaintiff was personally accountable to the acting coroner

(second factor); the coroner exercised a considerable amount of control over their

positions (fourth factor); Plaintiffs were directly below the coroner in the chain of

command for the coroner's office (fifth factor); and the coroner worked closely

with each of his deputies (sixth factor).  Each Plaintiff specified that Dr. Moylan

was his or her supervisor.  (Clews Dep. 16:9–24, 17:4–10; Detweiler Dep.11:25-

12:2; Pothering Dep., 10:20–11:3, 11:24–12:1.)  When they were on duty,

Plaintiffs were either called by Dr. Moylan or his chief deputy coroner to inform

them of the location of a scene where someone had died.  (Clews Dep. 20:5–12;

Detweiler Dep. 12:7–13; Pothering Dep. 12:15–20.)  After investigating the

situation to determine the cause and manner of death, they would call either Dr.

Moylan or his chief deputy, whomever had initially called them to the scene, to

report their findings.  (Clews Dep. 21:11–22:1, 22:5–7; Detweiler Dep. 12:7–13.)

Both Pothering and Detweiler testified that they worked closely with Dr.

Moylan.  (Pothering Dep. 14:11–12; Detweiler 12:17–19, 13:1.)  For example,

Plaintiff Pothering interreacted with Dr. Moylan "on a daily basis" to go over

cases, and he was solely responsible to him.  (Pothering Dep. 14:17–18, 11:24–

12:1.)  On location, Plaintiff Pothering explained that he was responsible for

gathering information on the scene and bringing it back to the coroner.  (Pothering

Dep. 13:12–16.)  He was Dr. Moylan's "eyes on the scene" or his "first line"

observer.  (Pothering Dep. 14:6–10.)  It was also his duty to pronounce the cause

and manner of death "[u]nder Dr. Moylan's supervision."  (Pothering Dep. 13:20–

14:5.)  When the state police made inquiries into an investigation, Plaintiff

Pothering explained that they first called Dr. Moylan for further explanation.

(Pothering Dep. 11:15–23.)  Dr. Moylan would then work with the deputy on the

case at issue to correct any mistakes.  (Pothering Dep. 11:24–12:6.)  Plaintiff

Detweiler also confirmed that Dr. Moylan still directs her work, though they do not

speak as much.  (Detweiler Dep. 13:2–5.)  Plaintiffs' intimate working

relationships with Dr. Moylan and their duty to act as his liaisons on the scene

demonstrate that Plaintiffs were more like members of the coroner's personal staff

than covered employees.  *See also Marburger*, 225 F. Supp. 2d at 513 (finding that

a plaintiff who "had substantial contact with [an elected body] in order to properly

express its will as she interacted on [its] behalf with a wide variety of Township

officers" was more akin to the elected body's personal staff member than its

employee).

Plaintiffs argue that the fact that Plaintiffs considered the coroner's chief deputy to be their supervisor indicates that they were not members of the coroner's personal staff.  (Doc. 29, at 10.)  Viewing this fact in the light most favorable to Plaintiffs, it does not alter the court's determination that the balance of these remaining factors indicates that Plaintiffs were the personal staff of the coroner, because the chief deputy was a member of coroner's office.  It makes practical sense for the coroner to rely on the help of his chief deputy to oversee certain scenes, as deaths perpetually occur at unpredictable hours.  Plaintiffs have not averred that they reported to anyone other than the coroner and the chief deputy coroner.  *See Conley*, 521 F. Supp. 2d at 454 (stating that the fact the plaintiff sometimes reported to the elected official's secretary is not determinative of whether the elected official actually supervised the plaintiff, but "[w]hat is determinative is that plaintiff did not report to anyone outside of the [elected official's] office.").

Taking each of these factors into consideration, while focusing on the broader inquiry of whether Plaintiffs worked in an intimate position of trust with the coroner, the court finds that Plaintiffs are exempted from the FLSA's definition of an "employee," because they were members of an elected official's personal staff.

Since Plaintiffs are exempted from the definition of an "employee" under the FLSA, their motion for partial summary judgment regarding Defendant's violations of the FLSA's overtime wage and retaliatory discharge provisions cannot succeed.  The FLSA's overtime wage and retaliatory discharge provisions only protect individuals who are considered "employees" under the act.  *See* 29 U.S.C. § 207(a)(1) (It is unlawful for an employer to "employ any of his <u>employees</u> . . . for a workweek longer than forty hours unless such <u>employee</u> receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); 29 U.S.C. § 215(a)(3) (It unlawful for any person "to discharge or in any other manner discriminate against any <u>employee</u> because such <u>employee</u> has filed any complaint" under or related to the FLSA.) (emphasis added); *see also Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062, 1067 (5th Cir. 2016) (stating that the FLSA does not allow "a nonemployee to bring an FLSA retaliation claim.").  Thus, Plaintiffs' motion for partial summary judgment is denied, Doc. 23.  For the same reason, Defendant's motion for summary judgment is granted, Doc. 20.

## CONCLUSION

For the foregoing reasons, the court will grant summary judgment in favor of Defendant.  Because Plaintiffs' motion for partial summary judgment, Doc. 23, is

predicated on Plaintiffs not being exempted from FLSA coverage as members of

the coroner's personal staff, their motion will be denied.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: May 20, 2020